205 So.2d 775 (1967)
Joseph Walter GAYLE et al.
v.
DEPARTMENT OF HIGHWAYS et al.
No. 7166.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
Rehearing Denied January 29, 1968.
Writs Refused March 8, 1968.
*777 John L. Avant, of Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for Joseph Walter Gayle and Mrs. Gayle.
Jimmie R. Major, Baton Rouge, for Henry Martin. Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Travelers Ins. Co.
Roger M. Fritchie, of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for Wilson P. Abraham and Insurance Co. of North America.
Norman L. Sisson, Philip K. Jones, D. Ross Banister, Baton Rouge, for Department of Highways.
Duncan S. Kemp, Amite, Dist. Atty., and Erlo J. Durbin, Denham Springs, for Livingston Parish Police Jury.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
ELLIS, Judge.
This case, which was consolidated with the case of Martin v. Department of Highways, et al, for purposes of trial, arises out of an accident which happened when Henry Martin drove a vehicle into a canal which traversed an allegedly abandoned stretch of State Highway 1025 in Livingston Parish. As a result of the accident, Martin was injured and his guest passenger, Winniefred Rebecca Gayle, was killed. A suit for wrongful death was brought by Miss Gayle's parents against the Department of Highways, the Livingston Parish Police Jury, Travelers Insurance Company, which insured the vehicle driven by Martin, *778 and Wilson P. Abraham, d/b/a Abraham Construction Company, and his insurer. Martin brought suit against the Department of Highways, and the Livingston Parish Police Jury, and Abraham and his insurer.
The two cases were consolidated for the purposes of trial, and after trial on the merits, the district judge rendered judgment in favor of the Gayles and against Travelers for $5000.00, the policy limit, and dismissed the suit as to the State, the Parish, and Abraham. Martin's suit was dismissed in its entirety, the judge having found that the accident was due solely to his fault. The judgments were appealed by Travelers, by Martin, and by the Gayles.
The record reveals that Wilson P. Abraham, d/b/a Abraham Construction Company, entered into a contract with the Department of Highways for the renovation of a portion of State Highway 1025 in the Parish of Livingston. In carrying out the work, it was necessary to relocate a portion of the highway, so that the old highway in that area was no longer used. The work under the contract was satisfactorily performed and was accepted by the Highway Department on May 14, 1963, notice of the acceptance being filed for the record in Livingston Parish of May 27, 1963. By letter dated May 21, 1963, the Livingston Parish Police Jury was formally notified on the acceptance of the work and of the discontinuance of State maintenance on those parts of 1025 which were no longer required. No action was taken by the Parish pursuant to that notice.
It is apparent from the record that the work required of Abraham Construction Company was carried out in accordance with the terms of the contract, and that the contractor had no connection with the events out of which the accident arose. No serious contention is made as to Abraham's liability, and we find that the case was properly dismissed as to him and his insurer by the district court.
The testimony indicates that the old stretch of highway crossed a ditch or canal, and that prior to the relocation, there was a wooden bridge traversing the canal. There was a general agreement or understanding between the Department of Highways and the Parish of Livingston that the Parish could have the material in the bridges located on stretches of highway abandoned by the State. Although express permission was never granted by the State to the Parish to remove the bridge in question, it is clear that the bridge over the canal in question was removed by Parish employees in the fall of 1962.
A number of Parish employees testified to the fact of the removal of the bridge in November, 1963, and to the use of the salvaged materials in constructing another bridge in another part of the Parish. Their testimony was supported by invoices for other materials used in the construction of the second bridge, and by showing the dates of death of the police jurors involved in the removal.
Two employees of the Department testified that the bridge was still in place in May, 1963, and that they crossed it at that time when they removed the route markers from the old road. They also testified that they left two curve markers and two delineators in place, the delineators being located on the bridge itself. They substantiated their testimony by production of a work sheet showing the signs which they located on the new road, but making no reference to markers removed from or left on the old road.
The district judge made no determination as to this point. We find that the Parish has substantiated its version by a preponderance of the evidence. We find further that no notice of the removal of the bridge was ever given to the Department by the Parish.
At its East end of the old road, it ended in a ditch leading onto Highway 447, and at the West end, the Highway Department located *779 a culvert which gave access from the new road to the old road. According to the Highway Department, it was placed there for the convenience of landowners whose property fronted on the old road.
No barricade or warning signs of any kind were placed at either side of the canal where the bridge was removed or at any other point along the old road, including the culvert at its West end.
On the evening of January 1, 1964, Martin, accompanied by Miss Gayle, drove onto the old road from the West end and parked. They had been parked there for about 35 or 40 minutes when a second automobile pulled up behind them. Martin became alarmed and drove off along the old road, at a speed which he estimated to be 30 to 35 miles per hour. He drove into the canal, and as a result thereof, he suffered injuries and Miss Gayle was killed. Martin testified that he was unable to see the canal until he was right on it because of the fact that the road inclined upwards and his headlights did not strike the surface of the road. He further testified that he had been familiar with the old road, prior to its relocation, and that he was unaware that the bridge had been removed.
It is the contention of the Department of Highways, that, having abandoned the maintenance of the stretch of road, by virtue of the notice to the police jury and the recordation of the acceptance hereinabove referred to, it substantially complied with the requirements of R.S. 48:224 and was discharged from any responsibility for the condition of the road. R.S. 48:224 provides as follows:
"When the director determines that certain sections of the state highway system have for any reason ceased to be used by the public to the extent that no public purpose is served, the director may, by appropriate certification, accompanied by a plat or sketch, placed on record in the parish in which the section of highway is located, declare the section of highway abandoned. Thereupon, the rights of the department and of the public in and to the section of highway cease.
"However, prior to certifying the abandonment of a highway or section thereof, the director shall notify the governing authorities of the parishes through which it passes of its intention.
"If the governing authority or authorities, by proper resolutions indicate their willingness and desire to take over the proposed abandoned highway and maintain it, the declaration of abandonment shall so state and thereafter the abandoned highway shall form part of the parish road system of the particular parish. If the governing authority or authorities are unwilling to take over the proposed abandoned highways and maintain them, or in the event of the abandonment of any property acquired for right of way, the realignment of which has been changed so as to make the right of way no longer needed for that purpose, the department may dispose of the property at either public or private sale, within the discretion of the director. However, the original vendor, or his successors in title, of the property to the highway department have the first right to repurchase it."
The purported notice of abandonment filed by the State reads, in full, as follows:
"STATE PROJECT NO. 832-29-09, OSGOOD STORE JUDSON CHURCH HIGHWAY, ROUTE NO. LA. 1025, LIVINGSTON PARISH
"TO WHOM IT MAY CONCERN:
"This is to certify that work known as State Project No. 832-29-09, Osgood StoreJudson Church Highway, Rouge No. La. 1025, Livingston Parish, and covered by contract dated November 7, 1961, between the Department of Highways and Wilson P. Abraham Construction Company, contractor, has been completed *780 and accepted by the Department on May 14, 1963.
 "GEO. F. STEVENSON
 "CHIEF ENGINEER
"ng
"ALL PHASES OF WORK COVERED UNDER THE ABOVE PROJECT ARE COMPLETE.
"TO BE MAINTAINED BY LDH
"STATE MAINTENANCE SHALL BE DISCONTINUED ON ANY AND ALL SECTIONS OF THE OLD ROUTE, THE RELOCATION OF WHICH ARE EFFECTED UNDER THE ABOVE PROJECT."
It is admitted that no plat or sketch of the abandoned portion was attached to the foregoing document.
We find that the notice of abandonment relied on by the State does not constitute a substantial compliance with the provisions of the above statute. The statute requires that the director certify that the road no longer serves any public purpose, and that he specifically declare it abandoned. No such certification is contained in the acceptance, and the only declaration relative to abandonment is that State maintenance will no longer be carried out. We feel that a footnote at the bottom of the notice of acceptance falls far short of a declaration of abandonment. We might also point out that R.S. 48:259 gives the Department the right to decide which parts of the highway system will be maintained, and which will not. A decision to terminate maintenance of a stretch of road could be pursuant to that section, rather than Section 224.
It appears that the Department, although not subject to an absolute duty to maintain the old stretch of Highway 1025, does maintain jurisdiction or control over it. As pointed out in the cases of Lamartiniere v. Daigrepont, 121 So.2d 585 (La. App. 2 Cir. 1960), and Lamartiniere v. Daigrepont, 168 So.2d 373 (La.App. 3 Cir. 1964) until such time as the Department formally abandons an unused stretch of road, no other person can exercise dominion or ownership over it. R.S. 48:224 provides for the sale of such strips, if neither the Department nor the appropriate Parish wish to maintain the road, and it is formally abandoned by the Department.
The Department, therefore, is the entity having control over the old road, and it must now be determined what duty is owed by it to those who use the road.
In the recent case of Pierrotti v. Louisiana Department of Highways, 146 So.2d 455 (La.App. 3 Cir. 1962), a somewhat analogous situation was considered by the Third Circuit, and they found that when "an old and dangerous road has been abandoned and a new location established" guards and warnings must be posted to prevent travelers from going on the old road in the belief, justified by appearances, that it is still open.
Although the case is distinguishable from this one on its facts, we feel that the same rule is appropriate here.
Certainly it would be reasonable to anticipate that, access to the old road being provided via the culvert, persons would go on it and use it. The Department left two of its curve markers on the old road, which could indicate that they expected persons to continue to use it.
Failing to post such warnings, the Department must either maintain the road in a reasonably safe condition, or warn of defects or hazardous conditions of which they have either actual or constructive notice.
One is presumed to have constructive notice of a defect or dangerous condition when it is shown to have existed for *781 such a long period of time that knowledge thereof can be presumed, or that it can be said that one ought to have had knowledge of the condition.
In this case, we find that the defect existed for six months before the Department attempted to abandon the old road, and for over thirteen months before the accident happened. During that period of time, the Department should have become aware of the removal of the bridge. Two of their employees were on the road as late as May, 1963, removing route markers, and, of necessity, should have then discovered that the bridge was gone. We therefore find that the Department had constructive notice of the removal of the bridge.
Under those circumstances, their failure to warn of the dangerous condition, or to maintain the road in a reasonably safe condition, renders them negligent, and we find that their negligence is a proximate cause of the accident.
We further find that in removing the bridge without authorization, and without notice to the Department, the police jury created the hazardous condition existing at the canal, and that their acts in so doing constitute negligence which is also a proximate cause of the accident.
On the other hand, we cannot find that Henry Martin was negligent. From the testimony and photographs in the record, it is clear that the road was overgrown in spots, and that some garbage had been dumped there, and one might presume therefrom that the road was no longer being maintained as a public thoroughfare. However, one driving along the road would have the right to assume that no traps or dangerous conditions existed, in the absence of warnings thereof. The terrain appears to be flat, so that there are no humps or dips in the road to warn of the existence of the canal. We do not believe that the speed of 30 to 35 miles per hour is excessive under the circumstances, that Martin was required to anticipate any hazardous condition or that the canal was of such a nature that he should have observed it before he did.
On the question of quantum, we find that plaintiffs' deceased daughter was 17 years old when she was killed, was employed, and contributed a small amount to her family from her wages. However, they were not dependent upon her. We feel that an award of $10,000.00 to each parent would be justified. In addition, plaintiffs have shown funeral expenses of $148.45 unpaid from other sources.
For the above and foregoing reasons, the judgment appealed from is affirmed as to the dismissal of Wilson P. Abraham, d/b/a Abraham Construction Company and his insurer, and in all other respects is reversed and there will be judgment herein in favor of plaintiffs and against the Louisiana Department of Highways and Livingston Parish Police Jury in solido in the full sum of $20,148.45, together with legal interest from date of judicial demand until paid, and judgment in favor of Travelers Insurance Company and against plaintiffs, dismissing plaintiffs' suit. All costs in the court below, and in this court, are to be borne by the Department of Highways and the Livingston Parish Police Jury to the extent provided by law.
Affirmed in part, reversed in part, and rendered.