272 So.2d 399 (1973)
Frances Marie Duffy PETREE, Plaintiff-Appellant,
v.
David CROWE et al., Defendants-Appellants, Intervenor-Appellant, Defendant-Appellee.
No. 12001.
Court of Appeal of Louisiana, Second Circuit.
January 9, 1973.
Rehearing Denied February 6, 1973.
Writs Refused March 26, 1973.
*400 Booth, Lockard, Jack, Pleasant & LeSage by Henry A. Politz, Shreveport, for plaintiff-appellant Francis Marie Duffy Petree.
Mayer & Smith by Alex F. Smith, Jr., Shreveport, for intervenor-appellant Continental Ins. Co.
Cook, Clark, Egan, Yancey & King by Gordon E. Rountree and Pugh & Nelson by Robert G. Pugh, Shreveport, for intervenor-appellant Mrs. John D. Whitaker and for defendants-appellants Aetna Casualty & Surety Co. and John D. Whitaker.
John S. Stephens, Coushatta, for defendant-appellee David Crowe.
Philip K. Jones, Norman L. Sisson, Robert J. Jones and William J. Doran, Jr., Baton Rouge, for defendant-appellee State of La., Through the Department of Highways.
Before AYRES, HEARD and HALL, JJ.
En Banc. Rehearing Denied February 6, 1973.
HALL, Judge.
The primary issue presented on appeal by appellants in this automobile accident case is whether the defendant-appellee, Louisiana Department of Highways, was guilty of negligence which was a proximate cause of the accident resulting in the death of plaintiff's husband and in injuries to the third party plaintiff and intervener. A second issue is the amount of damages awarded to plaintiff individually and on behalf of her minor daughter against another defendant, David Crowe.
The accident happened on Louisiana Highway 1 in Red River Parish approximately 1.5 miles north of Harmon on May 5, 1969, at approximately 3:15 p. m., during a heavy rain. Plaintiff's husband, A. T. Petree, Jr., was driving north following a 1966 Chevrolet being driven by David Crowe. The Crowe vehicle suddenly veered or slid to its left across the centerline, striking an oncoming Thunderbird driven by John S. Whitaker who was accompanied *401 by his wife. The impact caused the Whitaker vehicle to cross the centerline into the northbound lane where it collided with the Petree station wagon. After striking the Thunderbird, Crowe's vehicle also struck a pickup truck traveling south behind the Whitaker vehicle. Petree sustained severe injuries from which he died five days later. The Whitakers were also injured.
Plaintiff brought suit against (1) Crowe, who was uninsured; (2) Whitaker; (3) Aetna Casualty & Surety Company, Whitaker's liability insurer; and (4) State of Louisiana, through the Department of Highways. The petition charged the Department of Highways with negligence in (a) repairing the concrete highway at the accident scene with an asphalt mix which created an area which was much slicker in rainy weather than the concrete, thereby creating a trap for motorists; (b) allowing depressions to develop in the highway at the scene of the accident, which depressions held water during rainy weather causing motorists to lose control of their vehicles; (c) failing to take any measures to remedy these conditions after receiving notice that the conditions were causing motorists to lose control of their vehicles during rainy weather; and (d) failing to erect signs to warn unsuspecting motorists of the dangerous conditions.
Continental Insurance Company intervened seeking reimbursement out of the proceeds of any judgment rendered in favor of plaintiff for workmen's compensation benefits and medical expenses paid by intervenor under a policy of workmen's compensation insurance issued to Petree's employer. Continental also sought recovery against defendants for the amount of damage to the vehicle driven by Petree paid by intervenor under a collision insurance policy covering the vehicle. Whitaker and Aetna made third party demands and Mrs. Whitaker intervened against Crowe and the Department of Highways seeking recovery for property damage, personal injuries and medical expenses sustained by the Whitakers, Aetna being subrogated for amounts paid under its collision and uninsured motorist coverage afforded Whitaker. All defendants and third party defendants answered denying liability.
After trial, the district court held the sole proximate cause of the accident was the negligence of Crowe in operating his vehicle to the left of the highway centerline, thus colliding with the Whitaker vehicle which in turn struck the Petree vehicle. The court found no negligence on the part of Whitaker. The court also found no negligence on the part of the Department of Highways as the Department had no notice or knowledge prior to the accident of the dangerous condition of the highway if, in fact, it was dangerous.
Judgment was rendered against Crowe in favor of (1) plaintiff, individually, for $31,079.14, less 70.27% of $14,805 paid by Continental in workmen's compensation benefits; (b) plaintiff, as natural tutrix of her minor daughter, for $27,500, less 29.73% of $14,805 paid by Continental Insurance Company in workmen's compensation benefits; (c) Whitaker, for $4,692.75, less $2,092.75 paid by Aetna Casualty & Surety Company under its uninsured motorists coverage; (d) Mrs. Whitaker, for $5,500, less $1,500 paid by Aetna under its uninsured motorists coverage; (e) Aetna, for $5,892.75; and (f) Continental, for $16,605. All other principal and incidental demands against all other parties were rejected.
From this judgment appeals were perfected by plaintiff, Continental, Aetna and the Whitakers. Crowe did not appeal nor answer the appeals and his negligence and liability is not at issue before this court.
The central issue on appeal is the alleged negligence and liability of the Department of Highways. Appellants specify that the district court erred in failing to find that (1) a dangerous situation existed at the scene of the accident as a result of the condition of the highway; (2) the dangerous *402 situation caused or contributed to the accident; (3) the Department of Highways created the dangerous condition; and (4) the Department knew or should have known of the dangerous condition and had a duty to correct or warn motorists of the dangerous condition which it failed to do.
At the scene of the accident Louisiana Highway 1, one of the state's major north-south arteries carrying a substantial volume of traffic, consists of two lanes and is straight and level. The highway is paved with concrete but the stretch of the highway on which the accident occurred was overlaid with an asphalt surface covering the entire width of the highway and extending from 300 to 1,000 feet in length, according to the various witnesses.
Crowe was in the Navy and unavailable at the time of trial and his deposition taken earlier for purposes of discovery and/or use as evidence was offered into evidence. A student at Northwestern State University at the time of the accident, Crowe was traveling from Natchitoches to his home in Bossier City. He testified it was raining very hard as he proceeded north on Highway I with rain coming from the north hitting his windshield with considerable force. He was traveling at about 45 miles per hour and had noticed one automobile behind him. He suddenly hit what looked to him like "a lake" across the highway, skidded sideways, crossed the centerline, sideswiped the oncoming Thunderbird, continued sliding in the southbound lane and then hit the pickup truck. He traveled some 400 feet after hitting the Thunderbird. Crowe said he did not turn his steering wheel or hit his brakes or make any other maneuver prior to going into the skid. When he hit the water it came up over his windshield and the car turned sideways. Crowe testified the whole highway was wet and slick as glass. The water covered the highway but he did not realize it was that deep at the point of the skid. Visibility was very bad. When his car hit the water, "it just picked it up."
John Whitaker testified that he was driving his Thunderbird south on Highway 1 at a speed of about 55 miles per hour. It had been raining hard and water was everywhere on the road. The road was full of indentations where it had been worn and the indentations filled with water. If the water was bad enough it would slow your car down. Whitaker testified that the approaching Crowe automobile looked like it hit one of these puddles of water and just jumped up and went sideways and slid right into him striking the Whitaker automobile behind the door. The impact started the Whitaker automobile sliding and it crossed the centerline into the northbound lane at an angle resulting in a collision with the Petree vehicle. Whitaker testified Crowe stated at the scene of the accident that he hit a puddle of water and lost control.
Mrs. Whitaker testified that she looked up and saw the Crowe car begin to make a strange sideways slant and she felt like he was coming right into them.
The accident was also witnessed from a distance by two highway department employees, Albert Newman and Lloyd L. Bourgeois, who were driving north on Highway 1 about 300 or 400 yards from the point of the accident. Newman looked up and saw a car up in the air. It was raining very hard at the time. They stopped at the scene and did not notice any puddles on the road and did not see anything unusual about this particular stretch of the road. Crowe told Newman the accident was his fault and that his car hit a "sludge" and jumped. On cross-examination Newman testified Crowe may have said he hit a slick spot.
Bourgeois saw the accident from about 500 yards away. The road was puddling up in little spots but he did not think there was a lot of water on the road and there was nothing unusual about the road surface other than being wet. Bourgeois testified he could not tell much about the accident *403 because of the distance and weather conditions but it seemed as though some cars were sliding in the air and there was a crash.
The accident was investigated by State Trooper Lester S. Huckaby, III, who got to the scene of the accident about 30 to 45 minutes after it occurred. He testified it had rained and the roads were very slick. Crowe told him he hit some water that was standing on the highway and lost control of his vehicle. The highway at this point had been repaired and patched a good while back.
The state trooper had prepared an incident report on May 4, the day before the accident, noting previous accidents in the same area on November 15, 1968, December 8, 1968, February 1, 1969, March 23, 1969, April 27, 1969, and May 4, 1969. Most of the accidents happened when the highway was wet. The trooper testified that tar had bled through at this location and the highway was very slickslicker than the other parts of the road. There was no water standing on the highway and no puddles when he got there. On cross-examination it was brought out that the prior accidents in February, March and April involved more than one car. The trooper did not recall the facts of the May 4 accident. The accident of February 1 did not happen at the same spot. The trooper testified he investigated a number of single-car accidents where the cars left the road at this same location but did not make a report on them as he is not required to do so. The condition of the road with the tar bleeding through was apparent to anyone inspecting the road, according to the trooper. The condition was about 1,000 feet in length. Crowe told him his speed was about 55 miles per hour.
Plaintiff called several witnesses who testified concerning the condition of the highway. Ralph Bierden testified that he lives in the area and that the highway department did some work on that part of the road possibly five or six months before the accident. He was involved in an incident at the same spot. While driving along he hit a little bumpy spot and slid over into the other lane while the road was wet. This was in January, 1969, after the road had been patched. He knew of several accidents at the location, usually one-car accidents, and all during rainy weather. He reported the accident he was involved in to his brother, J. T. Bierden, Jr. who was on the police jury.
J. T. Bierden, Jr., a resident of Coushatta, testified he was a member of the police jury for twenty years and was chairman of the parish road committee. He was familiar with the scene of the accident. The road had gotten real rough and bad and the highway department patched it several months before the accident. The tar bled through the gravel and caused a slick condition when it got wet. His brother, Ralph, talked to him about the condition of the highway in the early part of February, 1969, on the way to a cattlemen's convention. His brother told him about sliding on the road. About three weeks later he reported the incident to the local highway department officialprobably Winfred Ross, during a conversation in a restaurant over a cup of coffee. Bierden testified he had personal knowledge of other incidents in the general area while it was raining.
A. P. Dill, a member of the police jury who lives on Clear Lake Road, testified Highway 1 had been patched thirty days or more before the accident. It was patched with tar or a black substance making this area darker than the other parts of the road.
B. D. Morgan, a retired state police officer, testified the highway department had put an overlay of asphalt on the highway. He had seen cars in the ditch in that area during rainy weather. The condition of the road when it rained was slick.
Testifying for the defendant was W. L. Ross, who was employed by the Department of Highways for twenty years. He was made highway maintenance superintendent *404 for Red River Parish in January, 1969, and before that was a road construction foreman. The place where the accident happened was overlaid about a year before the accident. Ross' responsibility was to check the roads and he rode over them at least once a week and sometimes more often. He checked the road in bad weather and if he found a place that was dangerous the department would patch it as soon as possible.
Ross went to the scene of the accident shortly after it happened. There was a spot there that had been patched years before. He did not notice any water standing in the road but there were ruts and depressions up and down the road that collected small pools of water. Ross testified that J. T. Bierden talked to him at a cafe one day and said there was a place or two on Highway 1 that he wanted him to ride over and look at where there had been a number of accidents and where there were some spots on the road. Bierden wanted Ross to ride up there with him and look at it. This was not too long before the accident. Bierden did not tell Ross the exact spot where the accidents were happening and never did come to ride over the area with him.
After the accident the Department of Highways put some catatonic asphalt and lightweight aggregate on the highway at the scene of the accident. Signs were put up after the accident also. Ross did not detect this particular spot as a trouble spot in riding over the road before the accident. He did not think this area was any worse than any other part of the highway but he made the repairs after the accident because the state police wanted him to. It was no worse there than anywhere else on the road. They repaired three different spots. He had no other reports of accidents at the spot except Mr. Bierden's report to him. There was no particular drainage problem at the spot of the accident and there were less depressions at this point because it had been patched over previously. Ross conceded that a patched spot can become slick if not properly put down.
Testimony was also given by Clarence Cole, a former employee of the Department of Highways who was Red River Parish foreman until he retired on December 31, 1968. Cole testified a slick spot can be caused when the rain hits the blacktop. Most every blacktop is slick when it rains. The slick condition can be caused by too much tar and bleeding. Such a condition is generally cured with an application of gravel or sand. When it goes to bleeding they ordinarily put something on the highway to keep the slickness down. Cole had no knowledge of any prior accidents in this area.
Barron Clinton testified he had been a highway department employee for twenty-two years and was foreman of blacktopping in Red River Parish. He recalled putting the patch down about five years ago. It stretched about 100 yards along the highway all the way across the road. The department did some patching in the same area after that. Clinton testified he never noticed any particular problem with this patch and never noticed it being slick. He rode up and down the road often and if the spot had been bad he would have fixed itthat was his job. He testified that after the accident they put down a coat of catatonic asphalt with clay rock to keep the area from being slick.
Melton Pickett, a highway department employee for more than ten years testified he worked in Clinton's crew. They patched this area probably six months prior to the accident. The patched area was 300 to 500 feet in length and covered both sides of the road. They put down asphalt and rock. After the patch was put on he would characterize the highway as in fair condition. They did not have any problems regarding the patch.
Roy E. Mitchell, Jr., district engineer for the Department of Highways, testified he visited the scene of the accident two days after the accident. He drove back and *405 forth over the patch at speeds up to 20 or 25 miles per hour and hit the brakes and found the skid resistance was not bad. He had no difficulty in going over this section of the highway. There was no trouble with drainage. The situation was not abnormally slick and did not warrant erection of barricades. The patch was about 500 feet long. He instructed Mr. Ross to put some gravel down and asphalt if needed.
Mitchell testified that in applying an asphalt overlay, if you put too much tar down it might bleed and come through. The highway department manual states that resealing before the first of May and after the middle of the month of September is seldom satisfactory. Hot, dry weather is ideal for this activity.
Harold Haire, assistant district engineer, testified he drove with Mitchell over the area and tested it by putting on the brakes of their car. They determined the area was not slippery and there were no spots holding water or any slick spots.
Joseph W. Holliday, assistant maintenance engineer, testified he went with Mitchell and Haire to the site on May 7. Mitchell had no trouble when he drove his car to check if the area was slippery. Holliday did not see anything that needed to be done to the highway. He did not particularly find the road slippery but as a precautionary measure he concurred in putting down lightweight aggregate to provide more traction.
L. D. Hughes, a highway department employee, testified that he went to the scene of the accident with Ross after they got a call. There was no water standing on the highway and he did not notice anything unusual or any particular slickness. He testified he drives this area often in rainy weather and never had any difficulty.
The parties are in agreement as to the principles of law applicable to this case.
The duty imposed upon a state or its Department of Highways or other appropriate authority is to construct and maintain highways which are reasonably safe for public travel. In the performance of this duty the character of the road and the probable traffic must be kept in view, as the requirement of reasonable safety implies safety for the general or ordinary travel, or use for any lawful or proper purpose. Kilpatrick v. State, 154 So.2d 439 (La.App. 2d Cir. 1963). See also, McCallum v. State Department of Highways, 246 So.2d 46 (La.App. 3d Cir. 1971); Reeves v. State, 80 So.2d 206 (La.App. 2d Cir. 1955); and Hogg v. Department of Highways of the State, 80 So.2d 182 (La. App. 2d Cir. 1955).
The Department of Highways has a duty of maintaining the highways in a safe condition. This includes the duty of providing proper safeguards or adequate warnings of dangerous conditions in the highway. What constitutes proper safeguards and adequate warnings to motorists varies with the dangers presented and should be of such a nature that it is commensurate with the danger. The negligence of the Department of Highways may be predicated on its knowledge or information of the existence of a dangerous or defective condition of the highway and subsequent failure to safeguard such condition. See McCallum v. State Department of Highways, supra. See also Falgout v. Falgout, 251 So.2d 424 (La.App. 1st Cir. 1971); Walker v. Jones, 230 So.2d 851 (La.App. 1st Cir. 1970); Hall v. State Department of Highways, 213 So.2d 169 (La. App. 3d Cir. 1968); Gayle v. Department of Highways, 205 So.2d 775 (La.App. 1st Cir. 1968); Kilpatrick v. State, supra; and Davis v. Department of Highways, 68 So. 2d 263 (La.App. 2d Cir. 1953).
The general rule is also well established and recognized in the jurisprudence that a motorist using a public highway has a right to presume, and to act upon the presumption, that the highway is safe for usual and ordinary traffic, either in daytime or at night, and that he is not required *406 to anticipate extraordinary danger, impediments, or obstructions to which his attention has not been directed and of which he has not been warned. See Kilpatrick v. State, supra; Falgout v. Falgout, supra; and Reeves v. State, supra.
Plaintiff's evidence falls short of proving that a dangerous condition existed at the point where Crowe's vehicle slid across the centerline or that the condition of the highway caused Crowe to lose control of his vehicle.
The weight of the evidence leads to a conclusion that the accident resulted from the failure of Crowe to maintain control of his vehicle in a heavy rainstorm which caused the presence of water on the highway, and not from any particular defect in the condition of the highway. Crowe himself, in statements made to others at the scene of the accident and in his testimony, emphasized the hitting of a "puddle" or "lake" of water as the precipitating cause of his losing control.
While the evidence would support a finding that Highway 1 in the vicinity of the accident is not a first-class, perfect road, the evidence does not establish a particular defective condition at the scene of the accidenteither in the nature of an unusually slick spot or deep depression or improper drainage. The evidence does not establish that the highway was not reasonably safe for motorists exercising care commensurate with the prevailing weather circumstances and general nature and condition of the highway.
The testimony relating to prior accidents in the vicinity is not persuasive. The manner in which the prior accidents happened and the cause or causes thereof are not clearly established, nor is the exact location of the prior accidents with relation to the specific point of the accident involved here.
Since we find that plaintiff has failed to prove the existence of a dangerous condition in the highway or that such a condition, even if it existed, was a cause in fact of the accident, it follows that there is no liability on the part of the Department of Highways.
The second issue presented on appeal is the amount of damages awarded to plaintiff individually and on behalf of her minor daughter against defendant Crowe. The judgment of the district court reflects awards of $27,500 each to the widow and child, plus special damages to the widow. Plaintiff urges the awards are inadequate and should be increased.
The evidence shows defendant Crowe was uninsured, was a student at Northwestern at the time of the accident, and was in the Navy at the time of trial. The implication from these facts is that Crowe may be financially unable to respond to the judgment rendered by the district courtmuch less to any increased award. However, no evidence was offered as to Crowe's inability to pay a judgment and in spite of any implications drawn from the facts in the record, we cannot consider his inability to respond in the absence of proof thereof.
At the time of his death, Petree was twenty-three years of age, with a life expectancy of forty-five years. He was survived by his widow who was also twenty-three and a two year old daughter. The evidence shows a close family relationship. Petree earned $6,555.29 during the calendar year 1968, and $3,217.25 during the first four months of 1969. Petree lived for five days after the accident before succumbing to the injuries received.
The awards of the district court are inadequate and amount to an abuse of that court's much discretion. The widow and child are each entitled to recover for loss of support, loss of love and affection, and for the pain and suffering of their husband and father. The widow is also entitled to recover the proven special damages. Considering all factors, we find appropriate awards are $100,000 plus special damages *407 to the widow and $30,000 for the child. See Webb v. Zurich Insurance Company, 251 La. 558, 205 So.2d 398 (1967); Hebert v. Patterson Truck Line, Inc., 247 So.2d 886 (La.App. 3d Cir. 1971); Luttrell v. State Farm Mutual Automobile Insurance Company, 244 So.2d 97 (La.App. 3d Cir. 1971); Gant v. Aetna Casualty & Surety Company, 234 So.2d 776 (La.App. 1st Cir. 1970); Allien v. Louisiana Power & Light Company, 202 So.2d 704 (La.App. 3d Cir. 1967); Tison v. Fidelity And Casualty Company Of New York, 181 So.2d 835 (La.App. 2d Cir. 1965); Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3d Cir. 1962); and Swillie v. General Motors Corporation, 133 So.2d 813 (La.App. 3d Cir. 1961).
For the reasons assigned, the judgment of the district court is amended to provide for judgment in favor of plaintiff, Frances Marie Duffy Petree and against defendant, David Crowe, as follows:
(a) Individually, in the amount of One Hundred Three Thousand, Five Hundred Seventy-Nine and 14/100 ($103,579.14) Dollars, less 70.27% of the Fourteen Thousand Eight Hundred Five and no/100 ($14,805.00) Dollars received from Continental Insurance Company in workmen's compensation benefits; and
(b) As Natural Tutrix, for the use and benefit of the minor, Christine Rene Petree, in the amount of Thirty Thousand and no/100 ($30,000.00) Dollars, less 29.73% of the Fourteen Thousand Eight Hundred Five and no/100 ($14,803.00) Dollars received from Continental Insurance Company in workmen's compensation benefits;
and, as amended, the judgment is affirmed. Defendant, David Crowe, is cast for all costs of appeal.
Amended, and as amended, affirmed.