GUIDRY, Judge.
Plaintiff, George Walker, filed this suit seeking damages for personal injuries sustained when the motorcycle he was operating on Highway 777 in LaSalle Parish allegedly flipped over at the approach to a recently installed cattle guard. The State of Louisiana through the Department of Highways is made defendant. The accident occurred in the late afternoon of June 8, 1972. The trial court granted judgment in favor of the plaintiff in the amount of $13,500.00. Defendant appealed.
The record reflects that on May 24, 1972, 15 days prior to the: accident, the defendant installed a cattle guard on Louisiana Highway 777 near Nebo, Louisiana. The installation required trenching across said highway at the site of the new cattle guard creating a gap which was approximately 8V2 feet long and 30 feet wide. The evidence does not reveal the depth of the trench. The cattle guard was made of steel guard rails placed six inches apart encased within creosoted headers. The cattle guard was supported by creosoted lumber.
Plaintiff contends that the Department of Highways was negligent in not properly installing the cattle gap in May of 1972; in not providing any type of warning device and/or sign to put the public on notice of the hazardous condition created by the cattle gap; and, in waiting until June 13,1972 to repair the cattle gap so that the general public could traverse it safely.
The testimony of the plaintiff indicated that he had been riding a friend’s motorcycle for about an hour when he approached the intersection of Louisiana Highway 127 and Highway 777 at which time he turned from Highway 127 onto Highway 777 and proceeded only 200 feet when he hit the cattle guard and the motorcycle overturned. Plaintiff testified that although he was familiar with the highway this was the first time he had crossed this cattle gap. Plaintiff stated that at the time of the accident he was driving at a reasonable rate of speed, having just turned onto Highway 777, and that he had both hands on the handles of the motorcycle.
A resident of the area, Mr. Lee Whatley, did not'see the accident in question but stated that he arrived at the scene shortly thereafter where he saw plaintiff lying on the ground at the site of the cattle guard. Mr. Whatley testified that he was very familiar with Highway 777 and was aware of the installation of the new cattle guard in late May of 1972. His testimony indicated that a person trying to cross this cattle guard almost had to come to a stop before attempting to cross. There was a drop off and a wide gap in between the asphalt road and the metal rails of the cattle guard.
Another local resident, Mr. Milton Paul, plaintiff’s uncle, corroborated the testimony of Whatley that the crossing of the cattle guard was very rough. He stated that the gap between the road and cattle guard was about 12-14 inches.
Both Messrs. Whatley and Paul testified that some few days following the accident a highway department crew repaired the cattle guard site raising the bed of the cattle guard to a position flush with the roadway.
Mr. Charles Martin, an employee of the Department of Highways and supervisor of the crew which installed the new cattle guard on Highway 777 stated that at the time of the installation the cattle guard and the road were flush but that whenever rails are placed on a wooden base, it can be expected that the weight of the traffic will lower the foundation of the cattle guard. It is customary, Mr. Martin stated, for the highway department to have to come back and raise a newly installed cattle guard. Mr. Martin admitted that on June 13, 1972 the cattle guard on Highway 777 was raised *252 some several inches. Martin’s testimony confirmed that there were no signs warning of the presence of this newly installed cattle guard.
Mr. Cleveland Taylor, an employee of the Department of Highways testified that he had poured a 2 inch strip of cold mix asphalt around the cattle guard on May 24, 1972, but that he was later called back on June 13th and on that day laid an 18 inch apron of asphalt on both approaches to the cattle guard.
The duty imposed by our law on the Department of Highways in connection with the construction and maintenance of public roads was excellently set forth in the case of Petree v. Crowe et al., 272 So.2d 399, 405 (La.App. 2nd Cir. 1973) writs refused, 274 So.2d 709, as follows:
“The duty imposed upon a state or its Department of Highways or other appropriate authority is to construct and maintain highways which are reasonably safe for public travel. In the performance of this duty the character of the road and the probable traffic must be kept in view, as the requirement of reasonable safety implies safety for the general or ordinary travel, or use for any lawful or proper purpose. Kilpatrick v. State, 154 So.2d 439 (La.App. 2d Cir. 1963). See also, McCallum v. State Department of Highways, 246 So.2d 46 (La.App. 3d Cir. 1971); Reeves v. State, 80 So.2d 206 (La.App. 2d Cir. 1955); and Hogg v. Department of Highways of the State, 80 So.2d 182 (La.App. 2d Cir. 1955).
The Department of Highways has a duty of maintaining the highways in a safe condition. This includes the duty of providing proper safeguards or adequate warnings of dangerous conditions in the highway. What constitutes proper safeguards and adequate warnings to motorists varies with the dangers presented and should be of such a nature that it is commensurate with the. danger. The negligence of the Department of Highways may be predicated on its knowledge or information of the existence of a dangerous or defective condition of the highway and subsequent failure to safeguard such condition. See McCallum v. State Department of Highways, supra. See also Falgout v. Falgout, 251 So.2d 424 (La.App. 1st Cir. 1971); Walker v. Jones, 230 So.2d 851 (La.App. 1st Cir. 1970); Hall v. State Department of Highways, 213 So.2d 169 (La.App. 3rd Cir. 1968); Gayle v. Department of Highways, 205 So.2d 775 (La.App. 1st Cir. 1968); Kilpatrick v. State, supra; and Davis v. Department of Highways, 68 So.2d 263 (La.App. 2d Cir. 1953).
The general rule is also well established and recognized in the jurisprudence that a motorist using a public highway has a right to presume, and to act upon the presumption, that the highway is safe for usual and ordinary traffic, either in daytime or at night, and that he is not required to anticipate extraordinary danger, impediments, or obstructions to which his attention has not been directed and of which he has not been warned. See Kilpatrick v. State, supra; Falgout v. Falgout, supra; and Reeves v. State, supra.”
The trial court found that the Department of Highways breached its duty to the plaintiff in that .
“ . . . the cattle gap sank as a natural and anticipated part of its installation process. The court finds it sank several inches to a depth sufficient to cause plaintiff’s motorcycle to fall when plaintiff crossed it in a normal operative fashion.
The court further finds that the Department failed to inspect it frequently enough even though it knew a newly installed gap would settle and need adjustment as a normal part of the installation procedure.”
The basis of the defendant’s appeal is that the factual findings of the trial court are conjectural and that there is no evidence to support such findings.
As a reviewing court we must give great weight to the factual conclusions of the trier of fact, and where there is a *253 conflict in testimony, reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed. Canter v. Koehring Company, 283 So.2d 716 (La.Sup.Ct.1973). Our own review of the record reveals ample support for the trial court’s factual conclusions.
The facts as found by the trial court, which we do not disturb, warrant the conclusion that the defendant was negligent in that it failed in its duty to construct and maintain that section of Highway 777 where the accident occurred in reasonably safe condition for public travel. We find, as did the trial court, that this negligence on the part of defendant was the sole and proximate cause of the accident and resulting injuries to plaintiff.
Appellant does not question on appeal the amount of general and special damages awarded to plaintiff and the latter is apparently satisfied with the award having neither appealed nor answered the appeal of defendant. This being considered, no good purpose would be served by reviewing the evidence adduced on this issue. Suffice it to say that we find the award to plaintiff of the sum of $13,500.00 to be reasonable.
For the foregoing reasons assigned the judgment appealed from is affirmed.
AFFIRMED.