333 So.2d 412 (1976)
Joycelyn ARDOIN et al., Plaintiffs-Appellants,
v.
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS and Cumis Insurance Society, Inc., Defendants-Appellees.
No. 5329.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1976.
Rehearing Denied June 30, 1976.
Writs Refused September 24, 1976.
*413 Ronald R. Thompson and D. Ross Banister, Wm. W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., Baton Rouge, for defendant-appellant.
E. M. Nichols, Lake Charles, for Linda Hardy.
Baggett, McClain & Morgan by R. Scott McClain, Lake Charles, for plaintiff-appellant-appellee.
Mayer, Smith & Roberts by Caldwell Roberts and Walter Hunter, Jr., Shreveport, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX, WATSON, GUIDRY and PAVY, JJ.
PAVY, Judge.
These are consolidated suits for the wrongful deaths of two passengers, Mrs. Julius (Orelia) Henry and Eldridge Henry, Jr., in an automobile which was swept from a flooded highway. The companion case (Docket No. 5330) is Hardy v. Cumis Insurance Society, Inc., 333 So.2d 420, La.App., in which we are rendering a separate decision this date. Plaintiffs in this suit are the children of Mrs. Orelia Henry.[1] Plaintiff in No. 5330 is the mother of Eldridge Henry, Jr. The defendants are (1) the Louisiana Department of Highways, (2) Julius Henry, who was driving the vehicle involved in the accident and (3) his insurer. The trial judge found the Louisiana Department of Highways negligent but absolved Mr. Henry and his insurer of all liability. From this decision, the Department of Highways and all plaintiffs appealed.
The issues are: (1) Were signs, barricades or signals placed by the Department of Highways in a manner sufficient to warn of the danger of the flooded highway? (2) Was Mr. Henry, the driver of the vehicle, negligent in proceeding on the flooded roadway?
At about 4:30 a. m. on the morning of April 12, 1974, Mr. Julius Henry left his home in Sulphur, Louisiana to visit his daughter in Bossier City. Accompanying Mr. Henry on this trip were his wife and *414 Eldridge Henry, Jr., their grandson. Mr. Henry was driving a 1967 Mercury Monterey automobile. His wife was riding in the front seat, and his grandson in the back seat.
The weather had been cloudy and overcast since he left his home. It had rained in Sulphur the night before, although he had driven through no rain on the date of the accident. At around 6:00 a. m. he was traveling north on U. S. Highway 171. It was not full daylight, and Mr. Henry was traveling with his lights on.
The accident occurred just north of Hodges Gardens where Highway 171 crosses Toro Creek. On the night of Appril 11-12, an unprecedented rain of over 9 inches had fallen in the general area and the streams were extemely swollen. Prior to midnight, the area maintenance crew of the Department of Highways had been called out to erect appropriate warning signs on the flooded highways and, between midnight and 2:00 a. m., they had placed some signs (the exact nature, location and number of which is in dispute) on the highway at Toro Creek.
Over the bed of this creek, Highway 171 is built on land fill except for three separate bridges. At the precise time of the accident, on approaching the Toro Creek from the south, one would first encounter a small, shallow area of water on the south end of the highway as it crosses Toro Creek. Immediately north of that is an unflooded stretch of the highway and next northwardly is a larger (deeper and more expansive) flooded area. According to the state trooper who arrived at the scene very shortly after the accident, the first flooded area was prior to (south of) the first bridge, the unflooded area extended from south of the first bridge to the middle of the second bridge and the larger flooded area extended from the middle of the second bridge to beyond the third bridge.
Shortly prior to the accident, Mr. Howard Quebedeaux and his son in a pickup truck and Mrs. Violet Kochell and several passengers in a station wagon had arrived at the crossing from the south. After reaching the unflooded area, they decided to investigate the possibility of crossing the larger flooded area by having Mr. Quebedeaux and a teenager from the Kochell vehicle wade into the water ahead of the two vehicles. Quebedeaux's son drove the pickup. After they had gone some distance into the larger body of water, Mr. Henry reached the accident site.
He (Henry) was preceded by two large trailer trucks loaded with logs. After the vehicles passed the Quebedeaux and Kochell vehicles some distance, the current swept the Henry car sideways off the west side of the road against two trees where it began to sink. Though he could not swim, Mr. Henry got out through a door window. He opened the trunk, obtained a tire tool and broke the rear window. He pulled his wife out of the back seat onto the trunk of the vehicle but could not find his grandson in the car. The water soon swept him and the wife off the trunk. He grabbed a nearby tree and held up his wife, administered mouth to mouth resuscitation and revived her. Rescuers soon removed them. Mrs. Henry died two days later in a hospital. The grandson drowned in the vehicle.
The district judge ruled that the accident was caused solely by the negligence of the Department of Highways and awarded $25,000 each to plaintiffs Mrs. Linda Lou Hardy and Eldridge Raymond Henry for the death of their child, Eldridge Raymond Henry, Jr. He awarded $10,000 each to the five children of Mrs. Orelia Henry for pain and suffering and subsequent death.

NEGLIGENCE OF DEPARTMENT OF HIGHWAYS
In written reasons, the trial judge held that the department was negligent in failing to warn of the dangerous situation at Toro Creek. We think there was ample evidence to sustain that conclusion.
*415 It is well settled that the Department of Highways owes a duty to the traveling public to erect barricades, signs and adequate markings to warn against extremely dangerous, traplike hazards, unusual obstructions, perilous conditions or defects in the road. This is especially true where the situation is inherently dangerous or where specifically required by statute. See LSA-R.S. 32:235. Vervik v. Department of Highways, 302 So.2d 895 (La.S.Ct. 1974); Hall v. Department of Highways, 213 So.2d 169 (La.App. 3rd Cir. 1958); LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La.App. 4th Cir. 1972); Falgout v. Falgout, 251 So.2d 427 (La.App. 1st Cir. 1971); Watts v. Baton Rouge, 248 So.2d 42 (La.App. 1st Cir. 1971); Gayle v. Department of Highways, 205 So.2d 775 (La.App. 1st Cir. 1967); Mixon v. Allstate Insurance Company, 300 So.2d 232 (La.App. 2nd Cir. 1974). Barricades and signs have been held to constitute a sufficient means of discharging duty to warn of dangers or defects. Munson v. Kendall, 290 So.2d 787 (La.App. 1st Cir. 1974).
The area in question is generally hilly, quick draining and subject to flash flooding and swelling of the streams. Almost yearly, the highway at Toro Creek is flooded over but rarely to the extent that occurred on this occasion. However, the testimony of the four maintenance employees of the Department of Highways who went to Toro Creek on that occasion makes it clear that by the time they reached Toro Creek the flooding was such as to require closing of the road over Toro Creek. They had approached Toro Creek from the north and according to them placed signs north of the creek. One of the signs was a "Road Closed" sign attached to a sawhorse type barricade. This barricade was about 4 feet high and 10 feet long with a 1" by 8" board (painted white and black) forming the crosspiece. The sign was attached to the board. Two of the employees were sent across (to the south side of) the creek in a dump truck to place similar signs. There was some apprehension among all of the crew as to whether the truck could cross and return safely. One of the employees sent to the south side testified that they placed a small (2 to 3 feet in height) metal sign on a stand about 50 yards south of the southernmost bridge. Another small sign was placed 50 yards further south. The testimony generally indicates that these two signs had such wording as "Men Working" or "High Water". A sawhorse type barricade as previously described with a "Road Closed" sign was placed another 50 to 100 yards south of the second sign. All these signs and barricades had smudge pot flares about them and they were placed in the middle of the road. The other employee who placed signs on the south side stated that the first sign was 50 feet south of the first bridge, the second sign was 50 feet south of the first sign and the barricade type sawhorse with sign was 50 to 100 feet south of the second sign.
One of the Department of Highway employees who did not go to the south side testified at deposition that the crew had no barricade structures left when it got to Toro Creek. On trial, he testified to the contrary but did not satisfactorily explain the contradiction.
Mr. Quebedeaux saw only a small metal sign with the words "Men Working" in the first patch of water. It was still standing. He did not see any barricade or other signs. Mrs. Kochell saw neither sign nor barricade. Mr. William St. Ama, one of the truck drivers (the other did not testify) saw neither signs nor barricades. The state trooper who arrived at the scene from the south just after the accident saw neither signs nor barricades. He stated that later in the morning some children were warding in shallow water on the road and discovered a small metal sign.
Considering this conflict between interested witnesses on the one hand and unbiased witnesses on the other, we think that the trial judge was fully justified in his ruling regarding the question of whether *416 the danger at Toro Creek was adequately signed. There is no question that the situation required closing the road. Obviously, when Mr. Quebedeaux, Mrs. Kochell, the two truck drivers and Henry arrived at the creek, the road did not have an adequate road-closing warning.
The contention is made by counsel for the Department of Highways that the danger was adequately signed but that unanticipated flooding carried the signs off the highway. There was some evidence that smudge pot flares were seen flooding in the water off the highway. There was testimony by the Department of Highway employees that the two employees sent across the south end were instructed to place some of the signs all the way back to a curve in the road beyond the bed of Toro Creek. The general import of the evidence is that the department's personnel were fully aware of the extent to which the water would continue to rise. Crucial on this issue is the testimony of Mr. Quebedeaux that he noticed the small metal sign but did not notice any barricade with "Road Closed" sign. This barricade, according to the testimony of the two employees who went to the south end of Toro Creek, would have been either 50 to 100 yards or feet or 100 to 150 yards or feet south of the first bridge, depending on whether the small sign Quebedeaux saw was the first or second sign south of the first bridge. It is difficult to believe that the small metal sign was still standing in the shallow water, but, at the same time, the large barricade type sign supposedly placed so far from the metal sign towards the outer limits of the creek would have been carried away by the current. Therefore, we conclude that the contention of the Department of Highways regarding the unanticipated flooding is without factual basis and the lower court was correct in rejecting said argument.
Thus, considering all the relevant circumstances and the interest of the witnesses, we conclude that the trial judge was not in "manifest error" in holding that the Department of Highways had failed in its duty to adequately warn of the hazardous situation at Toro Creek. See Canter v. Koehring Company, 283 So.2d 716 (La.Sup.Ct.1973).

NEGLIGENCE OF JULIUS HENRY
As previously noted, Julius Henry was unaware of the unusual downpour in the area the night before and was not chargeable with knowledge of a dangerously flooded highway. However, there are indications that he ought to have been on some notice that driving conditions may not have been absolutely normal. He knew he was in hilly country and had passed over a flooded stretch of highway some distance south of the Toro Creek site. Admittedly, this flooding had required a considerable slowing down of his vehicle. As he reached the site of the accident, he realized he was proceeding downhill and had again slowed down to get across the smaller (first) patch of water over the road at Toro Creek.
Mr. William St. Ama, the driver of the second of the two preceding trucks, testified that the lead driver had stopped prior to proceeding into the larger expanse of water. He (St. Ama) stopped his truck, dismounted and proceeded to discuss with the forward driver whether it was safe enough to proceed. St. Ama was a disinterested witness, and we cannot imagine why he would have falsified in this respect. His testimony constitutes a positive recollection of a specific incident. None of the other witnesses were questioned as to that matter, and his testimony stands uncontradicted. The trial judge did not comment on this testimony one way or another. We think it should be accepted as true. It is difficult to understand how this did not caution Henry as to some possible problem ahead, or how, when he first proceeded into the second water, the thought did not strike him that the truck drivers may have had some doubt about proceeding into the second water.
*417 Further, it is uncontradicted that after entering the second expanse of water, Henry had to pass the two stopped vehicles (the Kochell station wagon and the Quebedeaux pickup). From the testimony of both Quebedeaux and Mrs. Kochell, it appears that those two vehicles were in the left (Southbound) lane of travel and that he did not have to go around them. However, photographs indicate the road over Toro Creek is a normal two-lane highway. We cannot envision how Henry failed to see those two vehicles other than because of complete failure of lookout. We think this is an additional and perhaps stronger reason for him to have been alerted to, or suspicious of, the situation ahead.
Another consideration indicative of Henry's carelessness is the distance he proceeded into the second body of water without realizing the dangers. This is based on a comparison of the distance he went before being swept off the road in relation to where the Kochell car was when it was stopped and the occupants entertained grave doubts about proceeding any further.
According to both Quebedeaux and Mrs. Kochell, they were proceeding into the second body of water with Quebedeaux and the teenager from the Kochell vehicle wading ahead of the pickup truck with the Kochell vehicle following. Quebedeaux stated that the pickup truck moved over to the left to allow the trucks and Henry to pass, and he (Quebedeaux) decided to and was following them some distance when the Henry car was swept off the road. According to Mrs. Kochell, the water was in their car, almost up to the seats and they stopped at that point. Then, the teenager came to the car and suggested that they take the small children out of the Kochell car because of the danger. It was at this time that the two trucks and Henry passed them. There was some discussion (but no decision) between the adult occupants of the Kochell car as to whether to proceed behind the trucks and Henry. They thought the trucks would "tread the water" for them so as to allow a safe crossing. According to Quebedeaux, the Henry car proceeded 65 to 80 feet beyond where the Kochell car was stopped before it was swept away. According to Mrs. Kochell, when it was swept away, the Henry car was two to three car lengths in front of the Quebedeaux pickup. By then, the Quebedeaux truck had proceeded some distance from the stopped Kochell car. The fact of water in the Kochell car is strongly confirmatory of Henry's negligence in continuing beyond the point where the Kochell car had taken water to an alarming degree. We do not think Quebedeaux's decision to proceed is significant that Henry was not negligent. If Quebedeaux's decision was a prudent one, it was so only because of the height of the pickup truck.
Although a following motorist cannot see ahead of a preceding vehicle and must rely on the forward driver for lookout to a certain extent, he cannot blindly rely on the forward motorist. This is especially true as to dangers peculiar to the nature of the following vehicle. As to these, the following motorist must exercise all the more lookout and concern. For these type hazards, he should exercise an unusual degree of care. Here, at best for Henry and his insurer, the situation may not have been dangerous for the trucks (they were much heavier and much higher than an ordinary vehicle) but that did not mean that a hazard did not exist for the Henry car. That hazard was known to the occupants of the Kochell car. Henry ought to have realized it also. He was creeping into the deeper water. With timely realization of the danger, he would have had ample opportunity to avoid the turbulent water.
Mr. Henry stated that the last time he had been over this highway was 13 years before. He said that he did not know that there were bridges ahead where the water was over the road, and that he does not remember any parked vehicles on the side.
*418 He further testified that the road was covered with water and that he could not see the highway. The only way he could tell the location of the road was by the trees along the sides.
Mr. Henry stated that he did not look right or left. He just fixed his eyes on the trucks. He stated he could not see past the trucks; that he just followed right on behind the trucks into the water. According to Mr. Henry, although the roadway seemed to gradually decline as he proceeded on it, the surrounding land appeared to be flat. Thus, he did not expect the water to be deep. He said he had gone through the first patch of water across the road without difficulty and the water he was approaching seemed to be clam and still. He said neither he nor his wife was alarmed at entering the water and at no time did he have any doubts whatsoever about proceeding into it. Mr. St. Ama suggested that the appearance of the water was misleading.
Even considering this last bit of evidence, we must conclude that Mr. Henry was negligent in proceeding into the flooded highway. A motorist ordinarily has the right to assume his path is clear. However, where, as here, it is known to that motorist that danger lies ahead and that there is a hazard in the roadway, he can no longer assume the highway is safe for his travel. In the instant case, Mr. Henry was traveling very slowly at about 10 miles per hour, and he could plainly see the water ahead of him and all around him. Mr. Henry was unfamiliar with the road, not having traveled it in many years. He did not know the depth of the water, nor the swiftness of the current. He unreasonably assumed that if the log trucks could safely pass, he could also. It should have been obvious to him that the log trucks were much higher and heavier than his automobile and that even if they could safely cross, the water could be too too deep and the current too swift for his vehicle.
Counsel for Henry and his insurer cite the case of Rosier v. State, 50 So.2d 31 (1951, La.App. Ct. of App.) as controlling herein. We distinguish that case as involving a smaller and less dangerous appearing body of water without the several indications of hazard which were noticeable by Mr. Henry in the case at bar.
Considering the totality of the circumstances described above, we conclude that Henry was negligent in failing to maintain proper lookout and realize the impending danger and in venturing into the flooded waters of unknown depth, current etc.

QUANTUM
As previously noted, the trial judge awarded $25,000 to each of the parents of the child, Eldridge Raymond Henry, Jr., and $10,000 to each of the five children of Mrs. Orelia Henry.
We have carefully considered the general factors involved in determining the correctness of the amount decreed and the facts and circumstances peculiar to the case. It does not appear that we should disturb these awards. No useful purpose would be served by any detailed comparison of the awards in generally similar cases. We can only determine whether the award in this case was within the "much discretion" accorded the trial court under the provisions of Civil Code Article 1934. See Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149 (La.1963); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (La.1967); Anderson v. Welding Testing Laboratory, 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974); Walker v. Champion, 288 So.2d 44 (La.1973); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
Accordingly, for reasons assigned herein the judgment of the district court is affirmed insofar as it cast the State of Louisiana, through the Department of Highways, and it is reversed insofar as it rejected the demands against Cumis Insurance Society, Inc. It is now ordered that there be judgment herein as follows: (1) In favor *419 of Joycelyn Henry Ardoin, Florence Henry Slominsky, Eldridge Raymond Henry, Lou Anna Henry Drounette and Elwood Henry in the full sum of $10,000 to each and against the defendant, State of Louisiana, through the Department of Highways, and Cumis Insurance Society, Inc. in solido, plus legal interest from date of judicial demand until paid and for all costs of the trial court, (2) in favor of Eldridge Henry, Sr. in the full sum of $25,000 and against State of Louisiana, through the Department of Highways, and Cumis Insurance Society, Inc., in solido, plus legal interest from date of judicial demand until paid and for all costs of the trial court. (3) Cost of this appeal assessed against Cumis Insurance Society, Inc.
AFFIRMED IN PART AND REVERSED IN PART AND RENDERED.
CULPEPPER, J., concurs in part and dissents in part and assigns written reasons.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.
GUIDRY, J., concurs in part and dissents in part for reasons assigned by DOMENGEAUX, J.
CULPEPPER, Judge (concurring in part and dissenting in part).
I agree with the majority holding that Mr. Julius Henry was guilty of negligence, and hence that his insurer, Cumis Insurance Society, Inc., is liable. However, I disagree with the finding that the Department of Highways was negligent.
Considering the totality of the testimony, I conclude that the Department of Highways did everything it could to prevent the occurrence of an accident, such as the one herein. The evidence clearly shows that signs, flares and a barricade with the words "Road Closed" on it, were placed upon the highway at the southern approach to the flooded area.
There can be no question that the signs, flares and barricades as left by the highway crew at about 2:00 a. m. were sufficient to adequately warn motorists of the hazard. Some of the signs, flares or barricades apparently had been moved or knocked down by the time Mr. Henry arrived at about 6:00 a. m. However, once the Highway Department has posted adequate signs, it has no duty to maintain guards or sentinels to protect these signs, unless it knows or should know there is a reasonable likelihood that they will be moved. Sapir v. Sewage & Water Board of City of New Orleans, 127 So.2d 283 (La.App. 4th Cir. 1974) and Vervik v. State, Department of Highways, 302 So.2d 895 (La.S.Ct.1974).
I conclude the Department of Highways breached no duty owed to motorists and particularly to these plaintiffs to warn of the flooded conditions.
However, even if we assume the Department of Highways was negligent in failing to place more signs, or signs of a different kind, I cannot conclude that such failure was a cause in fact of the accident. Mr. Henry saw no signs whatever, although all others did see them. Henry testified he blindly followed the log trucks into the water, relying on them to get him across. He was watching only the trucks. He did not even see the bridges. Under these circumstances, the presence or absence of signs is immaterial. For, even if more or different signs had been placed, Henry would not have seen them.
For the reasons assigned, I respectfully concur in part and dissent in part.
DOMENGEAUX, Judge (concurring in part and dissenting in part).
I agree with the majority in its affirmation of the trial judge's decision holding the Department of Highways negligent. I disagree, however, in the reversal of the finding of lack of negligence on the part of the defendant, Julius Henry.
I would affirm on this purely factual issue. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
*420 The trial judge rendered a well written and lengthy descriptive opinion. The facts are recited and analyzed in detail. He heard and observed the witnesses. He is thoroughly familiar with the area. Considering the sum total of the evidence I do not feel that there is an ample basis to justify our reversal of the trial judge's finding to the effect that defendant Henry was free of negligence in this sad case. After reviewing this record, I find it reasonable to conclude that it was not foreseeable to defendant Henry that his car would have been swept off of the Highway by the rushing waters of the main creek. Petree v. Crowe, 272 So.2d 399 (La.App. 2nd Cir. 1973).
I find the case of Rosier v. State, 50 So.2d 31 (La.App. 2nd Cir. 1951) apposite to the facts of this case, not only for the proposition that the Department of Highways was negligent for not giving adequate warning of a hazardous condition, but also on the question of the alleged negligence of Mr. Henry.
Accordingly, I would affirm the judgment of the District Court.
NOTES
[1] In this suit, Eldridge Henry, Sr. asserts his claims as both the major child of Mrs. Henry and as father of his deceased child, Eldridge Henry, Jr.