213 So.2d 169 (1968)
Moses HALL and Eloise Hall, Plaintiffs-Appellees,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 2422.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1968.
Rehearing Denied August 20, 1968.
*170 Robert J. Jones, Asst. Gen. Counsel, Dept. of Highways, Baton Rouge, for defendant-appellant.
Gold, Hall & Skye, by James D. Davis, Alexandria, for plaintiffs-appellees.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
The plaintiff parents sue for the wrongful death of their major daughter. The State Department of Highways is made defendant because of its alleged negligence in failing to properly place warning signs or barricades. The Department appeals from adverse judgment awarding damages. The plaintiffs answer the appeal and request an increase.
The principal issue of this appeal concerns whether the state Department of Highways or the local (Parish) governmental authority had the responsibility to post warning signs and a barricade to protect the traveling public at an intersection of a state highway and a parish road. Before discussing this and subsidiary issues, we will outline the factual context in which they arise.
Facts
Prior to the accident, the decedent Shirley Ann Hall was riding as a guest passenger in an automobile driven by James Lee. Lee was driving north on Lincoln Road, a parish road, which intersected with and continued beyond the east-west State Highway 1208-1. However, as will be seen by reference to sketch below, on the north side of the state highway, Lincoln Road has an abrupt 44 change of alignment, so that a northbound driver must pull sharply left after crossing the highway. If instead he proceeds directly north, he will run into a deep drainage *171 canal, 40 feet wide and 25 feet deep, which parallels Lincoln Road very close to it.
The following is a sketch of the scene (not to scale):
 The present accident occurred when the driver Lee crossed the state highway and, proceeding straightward, plunged into the canal. His passenger drowned. At the *172 time, there were no warning signs or barricades to warn or protect northbound Lincoln Road traffic.
Duty to Sign or Barricade
An unusually dangerous trap for such traffic resulted from the deep and unobservable water body into which, in effect, northbound traffic suddenly terminatedthat is, when the travelway turned sharply left, without barricade or sign to warn of the change of direction. Further, because of the blending coloration of the surface areas and the depression of the canal, headlights of northbound night traffic on Lincoln Road could not alert an oncoming motorist to this trap.
There is no dispute as to the violation of duty on the part of the governmental authority responsible, because of the failure to erect signs or barricades to protect the traveling public from this unusually dangerous hazard resulting from what in effect was the sudden termination of the travelway into a deep and dangerous body of water. Kilpatrick v. State Through Dept. of Highways, 154 So.2d 439 (La.App.2d Cir. 1963); Pierroti v. Louisiana Department of Highways, 146 So.2d 455 (La.App.1962); Carlisle v. Parish of East Baton Rouge, 114 So.2d 62 (La.App. 1 Cir. 1959); Smith v. State Through Dept. of Highways, 87 So.2d 380 (La.App. 1 Cir. 1956); Dowden v. State, 81 So.2d 48 (La.App.2d Cir. 1955); Reeves v. State, 80 So.2d 206 (La.App.2d Cir. 1955). "The highway authorities in the exercise of reasonable care towards motorists are required to post notices and signs warning them of dangerous conditions", Davis v. Department of Highways, 68 So.2d 263 (La.App.2d Cir. 1953). See also (facts very similar to the present): German v. City of New Orleans, 3 So.2d 181 (La.App.Orl.1941); Clinton v. City of West Monroe, 187 So. 561 (La.App.2d Cir. 1939).
In this court, able highway counsel relies upon pronouncements in DeGregory v. State Though Department of Highways, 192 So.2d 834 (La.App. 1 Cir. 1966) and Abboud v. Hartford Acc. & Indemnity Co., 157 So.2d 338 (La.App.3d Cir. 1963). These are to the effect that, at T-intersections with favored highways, the highway safety authorities satisfy their obligation to warn motorists on the sideroad by an ordinary stop-sign, such as was here erected. Aside from other factual distinctions between the cited decisions and the present circumstances, the situation here concerned an unusually great hazard of both frequency and severity of accident. State police statistics admitted in evidence, for instance, showed that in most of the recent years reported there were 7-10 accidents annually involving northbound Lincoln Road traffic running into the canal.
Whose Duty: Parish's or State's?
It is in this context that we approach the central issue in this litigation. The appellant state department insists that it was the duty of the parish to erect signs or barricades to warn and protect against a hazard which was peculiar to northbound traffic on the parish travelway (Lincoln Road), not on the state highway. In contending that, instead, this duty was the state's the plaintiffs rely upon the statutory regulation applicable in 1960, when this accident occurred.
Prior to the enactment of the Louisiana Highway Regulatory Act of 1962 (La.-R.S. 32:1 et seq., Act. 310 of 1962), the pertinent statutory regulation provided as follows: The state department of highways "shall supervise and regulate all traffic on the public highways of this state * * *" LSA-R.S. 32:2, subd. A. The term "Highways" was defined as: "includes every way or place of whatever nature open to the use of the public for the purpose of the vehicular traffic." LSA-R.S. 32:1(8).
In the statutory provisions relating to the duties of the Department of Highways, the relevant enactment provided: "The department shall erect and maintain *173 all signs, signals, or devices necessary for informing, directing, cautioning, and warning the traveling public * * *." LSA-R.S. 48:345 (1950, as amended by Act 501, Section 2, of 1954; repealed by Highway Regulatory Act of 1962).
The Department argues that this power extended only to state highways (i.e., those designated as such by LSA-R.S. 48:191), because its statutory general function is "to study, administer, construct, improve, maintain, repair and regulate the use of the state highway system * * *." However, we believe this construction is negated by the general definition of highways as extending to any public way for traffic, LSA-R.S. 48:1(11). We note also that the statutory language in the enactments refers directly to "state highways" or the "state highway system" when a provision pertains only to them, whereas broader powers not limited just to state highways refer to powers to protect "the traveling public" or to further safe traffic on "[all] highways." See, e.g., LSA-R.S. 48:341-48:348 ("Traffic control and regulation").
Reenforcing this view, prior to 1962 the highway regulatory acts expressly limited traffic regulatory powers granted to local authorities (as well as traffic safety duties) to expressly designated functions. See for instance, the provisions codified by the Louisiana Revised Statutes of 1950: 32:229 (speed), 32:247 (no unreasonable decrease of speed limits), 32:344 (local traffic signs to give notice of local parking and special regulations [only]); 32:380 (nothing herein to limit "cities and towns" in their control of traffic; thus omitting parishes and other nonmunicipal authorities, as well as villages, from this exception from exclusive state traffic regulation).
The trial court, whose excellent analysis of the interrelated statutory provisions has been of inestimable assistance to us, correctly concluded: Not until the Louisiana Highway Regulatory Act of 1962 were local governments given authority and responsibility to erect signs and perform acts in aid of general highway safety, formerly (except for cities and towns) the exclusive responsibility of the state department. See LSA-R.S. 32:41, 32:42, 32:235 (1962). The statutory changes are persuasive that regulatory powers and traffic safety responsibilities, formerly deliberately withheld from local authorities, were now deliberately given them by the 1962 act as a deliberate change of prior law.
We therefore hold: Under the statutory regulation as it existed in 1960 (and before changed by the 1962 revision), the state department of highways and not the parish police jury had the legal responsibility to erect warning signs or barricades to protect the traveling public from the extremely dangerous and trap-like hazard at this intersection of a state highway and a parish road. This being so, the defendant state department is liable for the damages sustained by the plaintiff parents for the wrongful death of their daughter caused by this breach of its duty.
Subsidiary legal-cause and contribution issues
The state alternatively urges: Even if it is held negligent, (a) such negligence is not the proximate cause of the decedent's deaththis, rather, resulted from the negligence of the driver in failing to remember the danger of the intersection previously observed by him; and (b) in any event, the highway department is entitled to reduction by one-half of all damages awarded, because (it is alleged) the plaintiffs compromised their claim against the co-defendant police jury and dismissed it from the suit.
As to (a): Assuming arguendo that the decedent's driver was negligent in observation, control, or speed, nevertheless such negligence would be concurrent with the department's. The department breached its duty to erect warning *174 signs, so as to avoid the very type of damage which here resulted, when this unwarned automobile plunged into the canal. Negligence conduct is a cause-in-fact bringing about harm to another if it is a substantial factor in doing so; and it is (then) a proximate cause (assuming the harm encountered is one which the breached duty was designed to prevent) of the injury, even though the negligence of other actors may have also contributed to them. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), and succeeding jurisprudence.
As to (b): The Department relies upon the principal that one solidary obligor (joint tortfeasor) is entitled to have the obligee's claim against it reduced proportionately by deducting the share (part) owed by another solidary obligor who has been discharged by the obligee (since the obligee has defeated the first obligor's right to contribution for that part of the debt). LSA-Civil Code Articles 2103 and 2203, as interpreted by Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App.3d Cir. 1964) and succeeding jurisprudence.
However, even assuming that the record reflects that the plaintiffs compromised their claim against the co-defendant police jury, it must be established that the police jury was solidarily liable with the department before that principle is applicable. See Harvey at 163 So.2d 922; Guarisco v. Pennsylvania Casualty Co., 209 La. 435, 24 So.2d 678 (1945). As previously noted, the department has the sole responsibility to protect traffic. The police jury was not solidarily with the department, as it violated no duty (ordinarily). The Harvey v. Travelers Insurance Co. doctrine therefore does not apply.
Quantum
The trial court awarded special damages of $304 for funeral expenses and $7,500 to each parent for their loss of love, companionship, and support through the death of their daughter. By answer to the appeal the plaintiffs chiefly urge that the award to them should be substantially increased, because the record shows that these humble folks had greatly indebted themselves to finish the education of their daughter as a schoolteacher, from whom they could expect their chief support in their declining years.
In arriving at its award of general damages to each parent, the trial court stated: "The record sufficiently establishes that the bonds of affection between the plaintiffs and their daughter were close and that she responded to their love by returning her own. Further, they had much reason to be proud of her accomplishments in life and, after sacrificing to secure an education for her were just beginning to realize their reward when her untimely death occurred. Also, there can be no doubt that Shirley Ann's monetary contributions were greatly needed. On the other hand, there certainly is substantial evidence to show the likelihood of the deceased soon being married [and consequently not likely to contribute much to their support]. This Court believes this evidence to be strong enough to constitute an important factor for consideration."
The trier of fact has great discretion in the award of general damages, which great discretion should not be disturbed on appellate review unless clearly abused. Civil Code Article 1934; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Although the awards appear to be on the conservative side as we evaluate the evidence, we are unable to say that they constitute an abuse of discretion. They are affirmed.
However, we do find that the appellees' answer to the appeal correctly urges that in two minor respects the awards should be increased:
1. For funeral expenses paid by the father, our trial brother awarded $304.
*175 The actual funeral expenses were $554. Funeral insurance policies paid for $250 of these.
In deducting the $250 paid for by insurance to which the tortfeasor did not contribute, our trial brother fell into error. While a tortfeasor is entitled to credit for payments made through insurance procured by the tortfeasor himself, Gunter v. Lord, 242 La. 943, 140 So.2d 11 (1962), the plaintiff's tort recovery is not diminished because of payments made through insurance of other collateral sources independent of the wrongdoer's procuration or contribution, Gunter v. Lord at 140 So.2d 16; American Indemnity Co. v. New York Fire & Marine Underwriters Inc., 196 So.2d 592 (La. App. 1 Cir. 1967); Roux v. Brickett, 149 So.2d 456 (La.App.3d Cir. 1963).
The award to the plaintiff father should be increased an additional $250.
2. Under LSA-Civil Code Article 2315, a survivor may not only recover the damages he himself sustains through the decedent's wrongful death; in his favor also survives the right to recover damages sustained by the decedent himself. These plaintiffs' claim for their decedent's pain and suffering prior to her death was rejected by the trial court. It did so because there was no evidence to show whether the decedent was conscious in the few minutes she was trapped in the submerged car before her death, nor any pertaining to injuries which she may have received.
By answer to the appeal, the parents contend that the trial court required proof to a greater degree of certainty than the law requires. We agree.
The evidence of a medical expert, based on medical records of the defendant's death, was to the effect that the normal time of loss of consciousness from the time of first ingestion of water is about five minutes. He felt that it was probable the deceased was conscious for that period, based upon the lack of trauma to her skin and the pink froth found about her nose and mouth. He described such a death as frightening, and also painful as asphyxiation and aspiration into the lungs set in.
We think this uncontradicted and credible circumstantial evidence is sufficient to prove by a preponderance of the testimony that the decedent sustained at least some physical and mental pain and anguish during the remaining few conscious minutes of her life. Proof is sufficient to constitute a preponderance of the evidence when as a whole it shows that the event or causation sought to be proved is more probable than not. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Dupre v. Roane Flying Service, Inc., 196 So.2d 835 (La.App.1967). See also Sanders, The Anatomy of Proof in Civil Actions, 28 La.L.Rev. 297 (1968).
In the exercise of our discretion, and in the paucity of evidence as to show greater injury or more pronounced suffering or fright, we deem an award of $2,000 general damages for this claim as sufficient. See, e.g., Grantham v. Quinn Menhaden, Fisheries, Inc., 344 F.2d 590 (CA 4, 1965).
The judgment should be amended so as to award $2,000 for the decedent's conscious pain and suffering prior to death, with accordingly the judgment in favor of each parent being increased $1,000 for this item.
Decree
For the reasons assigned, the judgment in favor of the plaintiff father, Moses Hall, is amended by increasing it in the amount of One Thousand Two Hundred Fifty ($1,250) Dollars, and the judgment in favor of the plaintiff mother, Eloise Hall, is amended by increasing it in the amount of One Thousand ($1,000) Dollars, both amounts to bear legal interest *176 from date of judicial demand until paid (along with all other amounts awarded). As thus amended, the judgment of the trial court is affirmed.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.