425 So.2d 1307 (1983)
Patricia LOFTON and Sharon Cardinal
v.
Leon WHIMPER and New Orleans Public Service, Inc.
No. CA-0093.
Court of Appeal of Louisiana, Fourth Circuit.
January 3, 1983.
Darleen M. Jacobs, New Orleans, for plaintiffs-appellants.
James Maher, III, New Orleans Public Service, Inc., New Orleans, for defendants-appellants.
Before SCHOTT, CIACCIO and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal arising from an award of damages to plaintiffs-appellees, Patricia Lofton and Sharon Cardinal, against defendants-appellants, Leon Whimper and his employer, New Orleans Public Service, Incorporated, as a result of injuries sustained in an automobile/bus collision in New Orleans. Patricia Lofton was the only party seriously injured. Sharon Cardinal, the owner and driver of the car, is only seeking to recover for the damage caused to her automobile.
*1308 The only issue raised on appeal is that of quantum. Patricia Lofton's damage award consisted of:

General Damages $175,000.00
Past Medical Expenses 7,719.00
Future Medical Expenses 7,400.00
Past and Future Wages 6,850.00
 ____________
Total $196,969.00[1]
Damages to Cardinal's automobile amounted to $1,736.95, which included an amount to pay for a rental car.
The accident occurred on May 3, 1981, at approximately 10:00 o'clock A.M. at the intersection of Bienville and North Rampart Streets, on the fringe of the Vieux Carre. Plaintiffs' car was on Bienville travelling in a northerly direction away from the River and the Vieux Carre. Defendants' bus was on N. Rampart travelling in a westerly direction, from plaintiffs' right to left.
The evidence at trial showed that, at this intersection, N. Rampart has a neutral ground, or median strip, separating the opposing lanes of traffic. This intersection is controlled by an electric semaphore light signal which was green in plaintiffs' direction at the time of the collision. Before attempting to cross N. Rampart, plaintiffs' car was stopped on Bienville behind a tour van facing a red light. When the light changed to green, the tour van proceeded across the intersection, in front of defendants' bus, without incident. The bus was stopped about 10 feet away from this intersection at a marked bus stop. Plaintiffs' car followed the tour van across the first two lanes of N. Rampart, within seconds, and had entered the second two lanes when defendants' bus pulled away from the curb, on the far side of N. Rampart and started across Bienville striking the right front fender of plaintiffs' car. The force of the impact spun plaintiffs' car sideways.
Upon impact with the bus, Patricia Lofton, who was seated in the right front passenger seat, nearest the point of impact, was thrown forward against the interior of the car. She immediately felt sore and developed considerable pain in her neck, lower back and right leg. After six weeks, because the pain and soreness had not subsided, she consulted Dr. Kenneth Vogel, a neurosurgeon. Dr. Vogel treated plaintiff conservatively but later hospitalized her for a myelogram and a discogram. The results of these tests revealed the presence of a herniated disc at the L4-5 level in the back. A lumbar laminectomy was performed in September, 1981, but plaintiff continued to suffer. In December 1981, after several visits with Dr. Vogel, a CAT scan was performed which indicated the plaintiff had re-herniated her lumbar disc at the L4-5 level. A review of the record indicates that plaintiff, Patricia Lofton, had scheduled a second surgical procedure to correct the reherniation of her disc almost immediately. Although Dr. Vogel has estimated the second laminectomy should alleviate 80% of plaintiff's pain, she could still be expected to have a residual disability of 15% to 20% as a result of the second laminectomy.

QUANTUM
Defendants argue Ms. Lofton's award for general damages of $175,000.00 is excessive and should be reduced to $130,000.00. Appellant's brief cites numerous recent authority showing a wide range of awards for injuries similar to Ms. Lofton's. Those awards ranged from a low of $10,000.00 to a high of $150,000.00, however, each case must stand on its own facts. Walton v. Wolf Baking Co., Inc., 406 So.2d 168 (La. 1981). The adequacy or inadequacy of an award should be determined by the facts and circumstances of the particular case on appeal. Reck v. Stevens, 373 So.2d 498 (La.1979); Boutte v. Hargrove, 290 So.2d 319 (La.1974); Marshall v. Commercial Union Ins. Co., 378 So.2d 1052 (La.App.2d Cir. 1979). With respect to general damages for pain and suffering, each case must be weighed and calculated according to the facts peculiar to it alone. Peralta v. *1309 Schwegmann Bros. Giant Supermarkets, Inc., 406 So.2d 720 (La.App. 4th Cir.1981), writ denied 410 So.2d 762. Our approach in considering whether damages are excessive is to look only to the particular plaintiff's injuries rather than try to match similar injuries and prior awards. Ahern v. Weicks, 403 So.2d 1266 (La.App. 4th Cir. 1981).
We have examined the record carefully and conclude that Ms. Lofton suffered significant pain, even though there was only a short period of ten months between her injury and the date of trial. The testimony showed she can expect continued pain and discomfort for the rest of her life.
Ms. Lofton had scheduled a second laminectomy only one week after trial in an attempt to alleviate some of her pain. We cannot conclude on the facts presented that an award of $175,000.00 for her pain and suffering is excessive. See also Faciane v. Carter, 381 So.2d 1312 (La.App. 4th Cir. 1980). The trial court has not abused its discretion nor committed manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973).
The defendants further question the trial court's award of special damages for past and future medical expenses as well as lost wages. Past medicals were shown to be $7,719.00. Defendants argue that Ms. Lofton did not personally incur these expenses, since they had been paid by Ms. Cardinal's automobile bodily injury liability insurance coverage, and therefore, she should not be awarded any special damages. We find no merit in this argument. The collateral source doctrine has been well established in Louisiana, effectively barring defendants' claim. Taft v. Gist, 293 So.2d 641 (La.App. 3d Cir.1974); Womack v. Traveler's Ins. Co., 258 So.2d 562 (La.App. 1st Cir.1972); writ denied 260 So.2d 701; Riley v. Frantz, 253 So.2d 237 (La.App. 4th Cir.1971); Hall v. State of Louisiana, through the Dept. of Highways, 213 So.2d 169 (La.App. 3d Cir.1968), writ ref. 252 La. 959, 215 So.2d 128. Defendants may not take advantage of Ms. Lofton's good fortune when, as here, her friend's insurance partially paid for her loss.
The award of $7,400.00 for Ms. Lofton's future medical expenses includes an amount equal to the cost of the second laminectomy scheduled immediately after trial. If we assume, arguendo, that her operation will cost $5,000.00, that only leaves $2,400.00 for post-operative treatment. We find the amount of special damages awarded for medical expenses was well within the trial court's discretion and is not to be disturbed. Canter, supra. This amount might be considered low, in light of the amount awarded for general pain and suffering. However, taken together, the award of general and special damages is within the trial court's discretion.
The amount awarded Ms. Lofton for lost wages is also questioned on appeal. The award of $6,850.00 was based upon the testimony presented by Ms. Lofton's supervisor and an economist, Dr. Melville Wolfson. Defendants also contend that it was erroneous to find Ms. Lofton had missed any work at all as a result of her injury from the accident, because she was not "working" for wages she is not entitled to any compensation for lost wages.
Ms. Lofton applied for a job with Gold Mecca of Baton Rouge, in March, 1981. Before she could be put on the payroll she was required to complete a six-week training course covering the various phases of running a jewelry store. During this training period she would work a few hours each day, as the program required, for each particular segment, but was never paid for any of these hours. When an opening developed in one of the stores Ms. Lofton was placed on the payroll and went to work. In practice, this was the policy every new employee had to undergo in order to be hired. Within a few months of the incident Ms. Lofton was forced to miss numerous days of work due to her injuries. Her hours of work fell from an average 50-60 hours per week to an average of just a few hours per week. Since she was considered a full time employee, her absence was sorely felt. She was eventually dismissed because her employer could no longer depend on her. Her *1310 injury cost Ms. Lofton this job, and according to testimony, a job she was good at.
Apparently the trial court was much impressed with Ms. Lofton's testimony, and that of her supervisor, in making its determination that she was entitled to compensation for lost wages as a result of her accidental injury. We agree. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, supra.
Defendants contend that because there was a long delay in repairing Ms. Cardinal's car, they should not be held liable for the entire amount incurred in renting a substitute automobile. The testimony of Ms. Cardinal showed she used her car daily in her business as an interior designer and that it was necessary to visit her client's places of business or residences. The long delay to repair her car was not shown to be the fault of Ms. Cardinal. Therefore, we agree with the trial court in this award and reject defendants' argument. Arceneaux v. Domingue, supra; Canter v. Koehring, supra.
For the foregoing reasons, we find no abuse of discretion of the trial court in the amount of damages awarded and affirm the judgment below.
AFFIRMED.
NOTES
[1] The judgment also included legal interest from date of judicial demand and costs of litigation, including expert witness fees.