614 So.2d 1299 (1993)
Donald Christopher ALFORD, Plaintiff-Appellee,
v.
Lawrence WOODS, Jr., et al., Defendant-Appellant.
No. 92-282.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
Writ Denied May 7, 1993.
*1301 David Sherman Cook, Lafayette, for Donald C. Alford.
Raymond C. Jackson III, Lafayette, for Lawrence Woods et al.
Howard Louis Murphy, New Orleans, for National Fire & Marine.
Before LABORDE, YELVERTON and DECUIR, JJ.
DECUIR, Judge.
This suit arises out of an automobile accident. On April 14, 1986, plaintiff, Donald Christopher Alford, was a guest passenger in a patrol car driven by Lawrence Woods, Jr. and owned by the City of New Iberia. At the time of the accident, both plaintiff and Woods were police officers employed by the New Iberia City Police Department. In the early morning hours of April 14, 1986, Woods and the plaintiff were dispatched to a fight in progress at a 24-hour gas station or convenience store known by the plaintiff and Woods to be operated by a lone female employee. As the patrol car approached the intersection of Center and Dale Streets, Officer Woods ran a red light at the same time that the defendant, Herbert Davis, was proceeding through the intersection under a green light, and a collision occurred.
Plaintiff filed suit naming as defendants Herbert Davis, Davis' insurer, State Farm Mutual Automobile Insurance Company, Lawrence Woods, Jr., the City of New Iberia, the City's liability insurer, National Fire & Marine Insurance Company, and The Millers Casualty Insurance Company of Texas, plaintiff's personal uninsured motorist carrier. Prior to trial, defendants, Davis and State Farm were dismissed as a result of a settlement with the plaintiff. The City of New Iberia, was also dismissed as a result of tort immunity pursuant to the Worker's Compensation Act. National Fire & Marine remained a defendant due to its possible liability as the primary uninsured motorist carrier for the City of New Iberia.
After a trial on the merits, the trial court apportioned Officer Woods ninety percent (90%) of the fault and Davis with ten percent (10%) fault. The trial court also found that National Fire & Marine had met its burden of proof relative to the rejection of uninsured motorist coverage. Reasons for judgment were issued and judgment rendered dismissing plaintiff's suit against National Fire & Marine and in favor of plaintiff and against Millers Casualty in the total amount of $289,974.05, plus legal interest from date of judicial demand.
Millers Casualty and Plaintiff have appealed the trial court judgment. The issues presented on appeal are:
(1) Whether the rejection of uninsured motorist coverage by the City of New Iberia is valid.
(2) Whether the trial court erred in finding Officer Woods ninety percent (90%) at fault and Herbert Davis ten percent (10%) at fault in causing the accident.
(3) Whether the trial court erred in awarding plaintiff an amount for past medical expenses.
(4) Whether the trial court award to plaintiff is excessive.
(5) Whether the trial court failed to award damages for lost wages and loss of earning capacity.
*1302 National Fire and Marine has filed a motion to supplement the record on appeal to substitute the originals of uninsured motorist selection notices for the copies of these documents filed in evidence. The motion is GRANTED.

VALIDITY OF REJECTION OF UNINSURED MOTORIST COVERAGE
This is a dispute between two insurers. Millers contends that the trial court erred in allowing parol and extrinsic evidence relative to the issue of rejection of uninsured motorist coverage and in finding that the City of New Iberia had validity rejected uninsured motorist coverage in the policy issued by National Fire & Marine.
On March 28, 1986, Mayor J. Allen Daigre, as representative of the City of New Iberia, completed an application for automobile liability insurance from National Fire & Marine. The record reflects that Mayor Daigre was authorized to act on behalf of the City in procuring insurance and in rejecting uninsured motorist coverage. Evidence adduced at trial reflects that Mayor Daigre initially mistakenly checked the option accepting uninsured motorist coverage, rather than rejecting the same. Thereafter, George Schwing, insurance agent for the City of New Iberia, forwarded the application to Interstate Insurance Underwriters. The record supports the trial court's finding that the City of New Iberia did not intend to elect uninsured motorist coverage; that the City had not had uninsured motorist coverage in the past; that the City was not charged nor did the City pay a premium for the uninsured motorist coverage. Interstate discovered the error and requested a proper uninsured motorist rejection form. Thereafter, Mayor Daigre signed a rejection of uninsured motorist coverage form, but did not date the form. However, the reverse side of the form was stamped "Received" by Interstate on April 7, 1986.
Millers argues that the rejection form is not valid and that parol evidence is not admissible to prove that the City of New Iberia validly rejected uninsured motorist coverage. Appellant's contention of inadmissible parol and extrinsic evidence is without merit. Although parol evidence may not be introduced to vary the actual terms or provisions of a policy, evidence may be introduced to determine whether a policy is in force. Rockhold v. Dept. of Transportation & Development, 528 So.2d 749 (La.App. 4th Cir.1988), w.d. 533 So.2d 21. At issue in the matter sub judice is whether uninsured motorist coverage was in force and effect at the time of the accident.
We find no error in the trial court's ruling and adopt as our own the trial court's reasons for judgment regarding the validity of the rejection of uninsured motorist coverage by the City of New Iberia.

FINDING OF LIABILITY AND APPORTIONMENT OF FAULT
Appellate courts should not disturb a trial court's factual finding in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985); Howard v. Allstate, 520 So.2d 715 (La.1988). The record supports the finding that just prior to the accident, Officer Woods was traveling at a high rate of speed with lights flashing and siren engaged. We note that the trial court considered the evidence that Woods had knowledge as to the dangerous blind spot of the intersection due to buildings at the intersection, as well as the fact that Woods was traveling at an exceedingly high rate of speed. We find that the trial court correctly assigned the bulk of the liability to Officer Woods in disregarding the red light at the intersection. We find no error in the trial court's finding that Officer Woods breached his duty to the plaintiff and in assessing Officer Woods with ninety percent (90%) fault in causing the accident.
The record reflects that Davis was driving a "rag top" sports car with the radio on just prior to the accident. Although Davis may have been unable to see the warning lights due to the buildings *1303 which blocked his view at the intersection, we find no error in the trial court's finding that Davis either heard the siren and did not respond properly, or that he did not hear the siren, when under the circumstances he should have heard it. Stephen Young, the occupant of a nearby building, clearly heard the siren while watching television. The court notes that the trial court considered the fact that the accident occurred at approximately 1:00 a.m., a time when there are few noises to compete with the sound of a siren.
A driver's negligence is not imputable to a guest passenger. Unless there are special circumstances which indicate that a passenger's protests might have influenced a driver to operate more prudently, a passenger has no duty to comment on the operation of an automobile. Adams v. Security Insurance Co. of Hartford, 543 So.2d 480 (La.1989). Based upon the record, the trial court's finding that plaintiff did not contribute to the accident is not manifestly erroneous.
We conclude that the trial court's finding of liability and apportionment of fault is not erroneous and reflects a correct application of the jurisprudence on this issue. See Nelson v. State Department of Public Safety, 581 So.2d 344 (La.App. 3rd Cir. 1991).

AWARD FOR PAST MEDICAL EXPENSES
Appellant, Millers, contends that the trial court erred in awarding past medical expenses in the amount of $39,974.05 since plaintiff's medical expenses were paid not by the plaintiff but by the worker's compensation carrier. While a tortfeasor is entitled to credit for payments made through insurance procured by the tortfeasor himself, the plaintiff's tort recovery is not diminished because of payments made through insurance of other collateral sources independent of the wrongdoer's procuration or contribution. Hall v. State Department of Highways, 213 So.2d 169 (La.App. 3rd Cir.1968), writ refused 252 La. 959, 215 So.2d 128 (La. 1968); Surgi v. Otis Elevator Co., 541 So.2d 297 (La.App. 5th Cir. 1989); Friedmann v. Landa, 573 So.2d 1255 (4th Cir. 1991); Gilmore v. Russell, 555 So.2d 511 (4th Cir.1989), w.d. 559 So.2d 140 (La.1990). We conclude that the trial court's award for past medical expenses is not erroneous.

QUANTUM
The damage award of $250,000.00 was within the trial court's discretion. Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974). We conclude that the trial court's damage award is supported by the record. Plaintiff sustained serious injuries to his right leg, laceration of his eye and experienced dental problems as a result of the accident. Plaintiff underwent several surgical procedures in connection with his leg injury, suffered complications after one surgery and required a blood transfusion during a surgery. Plaintiff's treating physician assessed seventy percent (70%) impairment of the right leg and a thirty percent (30%) "whole person" disability. As a result of his injuries, plaintiff's legs differ in length, there is atrophy and scarring of the right calf, loss of motion in his toes and deformity of the foot with stiffness in the ankle.

LOST WAGES AND LOSS OF EARNING CAPACITY
Plaintiff contends that the trial court erred in failing to award damages for lost wages and loss of earning capacity. In reasons for judgment, the trial court states as follows:
"Considering the type of injury which plaintiff has sustained, he is entitled to recover $39,974.05 in past medical expenses. In addition, plaintiff is entitled *1304 to recover $250,000.00 for past and future mental and physical pain and suffering as well as to compensate him for past and future loss of enjoyment of life, and the disfigurement and disability he suffers as a result of the accident."
Plaintiff contends that although the trial court acknowledged in reasons for judgment that plaintiff has suffered a compensable loss of earning capacity, the trial court failed to award lost wages and future loss of earning.
From a reading of the trial court's reasons for judgment, we find that loss of earning capacity is included in the damage award of $250,000.00. However, the trial court failed to award damages for lost wages, to which plaintiff is clearly entitled. Based upon the evidence, we conclude that the plaintiff is additionally entitled to the sum of $10,943.32 as compensation for lost wages. The trial court judgment is hereby amended accordingly.
AFFIRMED AND AMENDED. Costs of appeal are assessed against defendant-appellant.
YELVERTSON, J., concurs and assigns reasons.
YELVERTON, Judge, concurring.
I question whether there was a valid rejection of the National Fire and Marine UM coverage, if the rejection is tested under the strict construction rule announced in Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987), and Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991). I can concur in the finding that there was a rejection in this case, only because the dispute is between two insurers. The plaintiff has UM coverage sufficient to cover the extent of his damages. For that reason, the interest of an innocent victim of the negligence of an uninsured motorist is not at stake. There is thus no public policy reason for us to apply the strict construction rule to analyze whether there was a proper rejection of UM coverage.
I agree with the majority's opinion in all other respects.