638 So.2d 283 (1994)
Terrence DUMAS
v.
Herbert HARRY, et al.
Nos. 94-CA-19, 94-CA-20.
Court of Appeal of Louisiana, Fifth Circuit.
May 11, 1994.
*284 Paul G. Aucoin, Vacherie, for appellant-plaintiff Terrance Dumas.
*285 David C. Forrester, Baton Rouge, for appellees-defendants Herbert Harry and the Louisiana Ins. Guar. Ass'n.
Stephanie Hrachovy, McNeil J. Kemmerly, Metairie, for appellee-defendant Prudential Property and Cas. Ins. Co.
Before BOWES, GAUDIN and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Terrance Dumas, was involved in an automobile accident and appeals from a judgment in which the jury found he suffered injury, but failed to award any damages. We vacate the judgment of the trial court relating to medical specials and lost wages, render judgment for both and affirm the remainder of the judgment.
On October 10, 1989, plaintiff was a passenger in a car driven by a co-employee and defendant, Randy Morvant. The two were on their way to work at Avondale Industries when their vehicle was struck in the rear by a van driven by defendant, Herbert Harry. The Morvant car was stopped behind a left-turning vehicle when the collision occurred. Plaintiff and Morvant continued on to work after a policeman completed his investigation of the accident. When they got to work, they examined the car because it was not "driving right". They discovered that the frame appeared to be bent and one tire was rubbing on the metal of the car. They then reported to their foremen that they had been in an accident. Because plaintiff was not feeling well, he went to the first aid department and then went to his personal physician, Dr. Roland Waguespack, a family practice specialist.
Dr. Waguespack treated plaintiff from the date of the accident until October 30, 1989, when he was referred to Dr. Neil Maki, an orthopedic surgeon. Dr. Maki wanted a second opinion, so in April of 1990 plaintiff went to Dr. Daniel Seltzer, another orthopedic specialist. He was also seen on one occasion by Dr. David Zelman, a rheumatologist, and he was treated by Dr. Leo Hebert, a specialist in gastro-intestinal problems. These treatments occurred over the course of one and one-half years and his primary diagnosis was low back strain, with an incident of antrogastritis from the anti-inflammatory medications. Plaintiff did not work during the first twelve months because the physicians restricted his activities and Avondale refused to accept his return to work with limitations. He ultimately returned to the job force in September of 1992.
As a result of his injury, plaintiff filed suit against Harry, his insurer, the Sovereign Fire and Casualty Insurance Company (Sovereign), Morvant and his uninsured motorist carrier, Prudential Property and Casualty Insurance Company (Prudential). In addition, plaintiff named as defendant, Boston Old Colony Insurance Company (Old Boston), the uninsured motorist carrier of his parents, since plaintiff resided with his parents at the time of the accident and was an insured under that policy. In his pleadings, plaintiff also alleged that Prudential was arbitrary and capricious in failing to pay his damages.
Sovereign became insolvent prior to trial and plaintiff substituted the Louisiana Insurance Guaranty Association (LIGA) in its place. LIGA became the excess insurer and Prudential become the primary insurer, followed by Old Boston. Old Boston settled with plaintiff prior to trial for $25,000, its policy limits, and $1000 for medical payments. In addition, Prudential unconditionally tendered $6000 to plaintiff.
The case was tried by jury on April 26, 27 and 29, 1993. Prior to trial it was stipulated by all parties that Harry was 100% liable for the accident. Following trial, the jury found that plaintiff was injured in the accident, but did not award any damages because they further found, through a special interrogatory, that plaintiff had already received adequate compensation. The jury also concluded that Prudential was not arbitrary and capricious. The Amended Judgment reflecting the verdict was dated September 3, 1993.
Plaintiff appeals from the Amended Judgment of September 3, 1993 and assigns four errors of the trial court. First, plaintiff asserts that the jury erred in failing to award damages because they were improperly allowed to consider evidence of collateral *286 sources of recovery. Second, plaintiff contends that the trial judge erred in giving a jury interrogatory related to collateral sources. Third, plaintiff argues that the jury erred in finding that plaintiff was sufficiently compensated. Fourth, the jury erred in not finding Prudential arbitrary and capricious.
Plaintiff argues that the trial judge erred in admitting, over his objection, evidence of disability payments and Blue Cross Health Insurance payments, both collateral source income and inadmissable under the collateral source rule, since defendant is not entitled to a credit for these payments.
Defendant responds that the rule does not apply to uninsured motorist carriers. Defendant alternatively argues that, if the rule applies, the evidence is admissible because it was introduced as a defense to the arbitrary and capricious allegation.
The collateral source rule holds that a tortfeasor is not entitled to a credit for payments made to a plaintiff through collateral sources independent of the wrongdoer's procuration or contribution. Hall v. State, Department of Highways, 213 So.2d 169, 175 (La.App. 3rd Cir.1968), writ refused 252 La. 959, 215 So.2d 128 (La.1968); Surgi v. Otis Elevator Co., 541 So.2d 297 (La.App. 5th Cir.1989); See also Turcich v. Baker, 594 So.2d 505 (La.App. 5th Cir.1992). Only payments made by the tortfeasor are entitled to consideration in order that the tortfeasor can be granted a credit. However, if the evidence is produced to impeach the credibility of plaintiff, the collateral source rule does not apply. See Turcich at 507.
In this case, plaintiff was cross-examined regarding disability payments he received from his employer, medical payments from Blue Cross and the $6,000 unconditional tender from Prudential. Plaintiff objected timely to the questions regarding the disability and medical payments on the basis of the collateral source rule. The objections were overruled based on the defense argument that the testimony was relevant to the issue of the arbitrary and capricious claim. This testimony informed the jury that plaintiff had received $125 per week for six months and two weeks and that Blue Cross paid some undisclosed amount of the medical bills.
Again, later in the trial, the jury heard similar collateral source evidence when defendant's claims adjuster, Sue Fortier, testified. Fortier stated on direct examination that she considered these collateral source payments, among other things, when she analyzed the claim. She testified that she knew that defendant would not be entitled to a credit for the payments, but also stated that she was concerned that Blue Cross would make a claim against defendant for subrogation of the medical payments.
Defendant argued that Fortier knew about the disability because it was paid pursuant to an Avondale policy issued by another branch of Prudential. However, Avondale paid premiums for that policy, and as such, is a collateral source. Further, defendant cites no authority for its position that uninsured motorist carriers are exempt from the collateral source rule. The point of the rule, and it applies here, is that defendant cannot benefit from the financial payments of others.
The evidence of disability and medical payments made by Avondale and Blue Cross are clearly, inadmissible collateral sources. We do not agree that they are admissible for purposes of the arbitrary and capricious claim, because under no circumstances is defendant granted a credit, set-off or any other type of mitigation of its liability for damages because of these payments. The trial judge committed manifest error when he allowed the jury to hear and consider the collateral source payments and did not admonish the jury to disregard them.
Our finding affects the second error presented by plaintiff. In that specification, plaintiff complains that the trial judge erred in submitting a jury interrogatory that did not limit the consideration of plaintiff's previous compensation to the $6000 tender made by defendant. Plaintiff asserts that without the limitation, the jury was improperly permitted to consider the disability and the medical payments, which plaintiff asserts prejudicially affected the jury's determination that plaintiff had already received sufficient compensation for his injury. We agree and find that the trial judge committed error by submitting *287 a misleading interrogatory to the jury, which tainted its determination of the amount of damages.
The jury was given several special interrogatories which individually asked whether plaintiff sustained any physical injury or damage in the accident, medical expenses, economic loss and pain and suffering. The jury answered "yes" to all the questions, but marked "no" to the second question on each interrogatory which questioned whether plaintiff was entitled to an award for each of these elements. Apparently, the jury found that plaintiff was already compensated for his injury.
The interrogatory complained of by plaintiff asked the following:
"If you find that Terrance Dumas did sustain any injury or damage as a result of his motor vehicle accident of October 10, has he already received sufficient compensation for those damages?"
The jury answered "yes" to this question. Because the trial judge failed, over plaintiff's objection, to limit the interrogatory to the $6,000 tendered by defendant, the jury conceivably considered the disability and medical payments, which as we have found, were erroneously admitted into evidence.
The trial judge is required to give the jury instructions or interrogatories which fairly and reasonably point out the issues, cite correct applicable legal principles and avoid interrogatories that are misleading and/or confusing. Crooks v. National Union Fire Insurance Co., 620 So.2d 421 (La.App. 5th Cir.1993). Likewise, the trial judge is required to make proper evidentiary rulings. When the trial judge fails to give proper instructions, interrogatories or allows improper evidence to be considered by the jury and the error taints the jury verdict, then the verdict is disregarded and the appellate court makes an independent finding of fact, if the record is sufficiently complete for a de novo review. See Crooks at 424 and Rigaud v. Deruise, 613 So.2d 761, 765 (La.App. 4th Cir.1993) and Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). Since we have found that the trial judge made both incorrect evidentiary rulings and submitted an improper interrogatory to the jury which prejudicially affected their findings of fact and, the record is sufficiently complete here, we will review plaintiff's damages de novo.
Plaintiff suffered a low back strain that did not resolve for one and one-half years after the accident. The physicians who treated plaintiff were unable to determine the reason the soft tissue injury continued to plague plaintiff. Objective tests were negative and muscle spasms were noted only twice, several months after the accident. Because of the uncertainty, Dr. Waguespack referred plaintiff to Dr. Maki, who also referred plaintiff to another orthopedic surgeon after five months. Rather than going to Dr. Maki's choice of physician, plaintiff sought the advice of Dr. Seltzer, who remained plaintiff's treating physician from April 1990 until May 1991.
For the most part, the treating physicians did not feel that plaintiff was malingering and Dr. Selzer testified that, while plaintiff's long recovery was unusual, some patients take longer than others to recover. Dr. Maki also stated that it was not unusual for a patient to have discomfort with weather and/or activity changes. Dr. Seltzer further noted that a malingerer would have attempted to exaggerate the range of motion in the exams, whereas this plaintiff showed normal range of motion, although he was guarded in the tests according to Dr. Maki. Furthermore, Dr. Maki testified that the complaints were consistent and he was reliable in the follow-up treatment programs.
The question of the motivation of "secondary gain" arose in Dr. Maki's testimony, which defendant was trying to prove might have been affecting the recovery. Dr. Maki explained that secondary gain is an impairment to getting well for any number of reasons, including financial compensation, legal settlement, attention from a parent or girlfriend, medication or any other emotional reason. He admitted that some secondary gain might have been operating to impede plaintiff's recovery.
Dr. Zelman examined plaintiff once at the request of Dr. Maki to rule out arthritis-related problems. In his report, Dr. Zelman stated that he did not think the patient was *288 cooperating in the physical exam. Nonetheless, he diagnosed plaintiff with a back strain.
On May 14, 1990, Dr. Christopher Cenac, an orthopedic surgeon, examined plaintiff one time at the request of defendant. According to Dr. Cenac, plaintiff exhibited minimal spasm, showed difficulty in getting on and off the examining table and in walking and bending. However, he stated that the actions of plaintiff were not consistent with the normal neurological exam. He further stated that the complaints were subjective and controlled by plaintiff. Dr. Cenac testified that even the muscle spasm could have been consciously triggered since it is a contraction. His diagnosis was resolved lumbosacral strain with no residual injury.
Plaintiff testified that his occupation at Avondale was a tacker-welder, a job requiring bending, stooping, carrying heavy objects and kneeling. He stated that he began to develop stiffness and pain in his neck, back and right shoulder following the accident causing him to seek treatment from Dr. Waguespack. He testified that he was given pain medications and heat treatments and that he wore a neck collar.
Dr. Waguespack discharged plaintiff on October 23, 1989 for return to work. However, when he returned to work he was required to get the approval of the company doctor who found he was not able to bend without discomfort. As a result, he was told to return when he could perform his full duties. Plaintiff stated he began to feel worse during the day and went to Dr. Waguespack's home that evening, but since he was not home, saw him the next day at the office.
Over the course of his treatment, plaintiff testified that he wore a back brace or corset almost every day, had physical therapy and performed exercises provided by the therapist. He said that he had good days and bad days. Plaintiff testified that he was unable to drive and stopped his previous leisure activities of ball playing, fishing, hunting and yard work. He lived at home with his parents and his mother helped him move around. Plaintiff noted that he suffered stomach problems from the anti-inflammatory medications.
In June 1990, plaintiff was released by Dr. Seltzer for light duty work. However, Avondale, according to company policy, refused to allow him back to work until he was able to perform his full duties. At the time he was discharged by Dr. Seltzer on May 7, 1991, he was told not to engage in heavy lifting or carrying at work or recreation and that he had reached maximum medical improvement.
Plaintiff stated that his symptoms gradually got better. As of the date of trial, plaintiff claimed that he still has problems on occasions. He testified that he never exaggerated the pain and did not seek any secondary gain from the injury.
Plaintiff was cross-examined about injuries he received three weeks before the accident. In that incident, plaintiff was attacked at a football game and went to the emergency room of the local hospital. He lost some time at work as a result, but was returned to full duty when the auto accident happened. Plaintiff testified that he was kicked and injured his left arm, not the side that he hurt in the car accident. He asserted that one of the responsible parties paid his medicals and he did not file suit in that case.
One line of questioning by defendant throughout the trial related to numerous telephone calls to one doctor's office for refills of the medications plaintiff was receiving. Plaintiff explained that he had to call because the medications were not refillable. Notably, most of the medications were anti-inflammatory drugs, not narcotics and the physicians did not give credence to defendant's implications that plaintiff was addicted to any of the drugs, although Dr. Maki was careful about weaning him from Tylenol # 3, a mild pain reliever which he prescribed for plaintiff between October, 1989 and March 1990.
Plaintiff's mother, Ester Dumas, also testified. She stated that her son was in severe pain after the accident. She testified that she stayed up at night with plaintiff, helped him to and from the bathroom, brought his food to him, gave him back massages and even handed him the telephone. She stated that he stopped driving for about one year, was unable to work in the yard and to participate *289 in his previous activities. She testified that plaintiff did the exercises recommended by the doctor and that he was somewhat better after six months. She stated that plaintiff wanted to return to work, but could not because of his injury.
The evidence shows, more likely than not, that plaintiff suffered a relatively long-term soft tissue injury. By it's nature, the doctors testified that the soft tissue injury does not show up on objective tests. Further, Dr. Seltzer, the treating physician for over one year and the plaintiff's family physician, Dr. Waguespack, believed that the plaintiff was not exaggerating his pain. The evidence also shows that plaintiff's inability to return to work was caused by the injury since Avondale refused to allow him to return to work on a restricted basis. Thus, we find that plaintiff suffered injury from the accident and that he is entitled to damages.
After reviewing the evidence, we find that the plaintiff is entitled to recover his medical expenses in the amount of $6175.15, which has not been contested by defendant on appeal. We further find that plaintiff is entitled to recover his lost wages from October 1989 until May 1991 in the amount of $21,836.60. We find that plaintiff has received minimally sufficient compensation for general damages in the amount of the $6000 tender by defendant.
The final issue is whether the defendant should be cast for penalties and attorney fees for the arbitrary and capricious failure to pay the claim of plaintiff under La.R.S. 22:658; R.S. 22:1214; R.S. 22:1217 and R.S. 22:1220. Plaintiff argues that at the time defendant made the $6000 tender, it was in receipt of medical bills for over $5,000.
Sue Fortier, the claims adjuster, stated that the decision to offer $6000 was made because plaintiff suffered a soft tissue injury, based on the medical reports and the police report of the accident. She testified that she noticed a lot of "narcotic" bills. In analyzing the claim, Fortier removed the bills for the stomach problems, feeling that these were unrelated. She stated that she relied heavily on Dr. Waguespack's report because he saw plaintiff first. She also indicated that there was uncertainty as to the cause of the sudden onset of pain that was noted when plaintiff returned to Dr. Waguespack on October 24, 1989. She testified that the reports indicated no objective findings and that there was no reason for the continuance of the complaints of pain. Fortier stated that she had in her possession the restrictions placed on plaintiff by his physician, but felt that the overall evidence did not support an additional tender in excess of the initial tender of $6,000, after she received all of the medical reports. As we noted earlier, she admitted to considering the disability payments, even though she knew that the defendant was not entitled to a credit for the payments.
After considering all of the evidence on this issue, we find that plaintiff failed to show that defendant was arbitrary and capricious under any of the cited statutes. The length of time that the pain lingered was unusual. Other factors created a reasonable suspicion that the complaints may not have been sincere. Although we have found that the evidence supports a finding for plaintiff after a three day trial, we also find that Prudential was not arbitrary and capricious in failing to tender plaintiff an amount for lost wages and medical bills over the $6000 tendered in February 1992.
Accordingly, the verdict and judgment of the trial court is hereby affirmed in part, reversed in part and rendered as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment is favor of plaintiff, Terrance Dumas, and against defendant, Prudential Property and Casualty Insurance Company, in the sum of $6,175.15 for past medical bills and in the sum of $21,836.60 for lost wages.
The judgment is affirmed in all other respects.
Costs of the trial court and appeal are to be paid by Prudential.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND RENDERED.